WELLS FARGO & CO. v. JOHNSON, State Treasurer.

FARGO v. SAME.

(District Court, D. South Dakota, S. D.   April 2, 1913.)

Nos. 628, 629.

1. TAXATION (§§ 54, 371½*)—ASSESSMENT OF PROPERTY OF EXPRESS COMPANIES—SOUTH DAKOTA STATUTE.

Laws S. D. 1907, c. 64, §§ 16, 17, providing for the assessment and taxation of express and sleeping car companies, does not authorize the imposition of a tax on either the gross or net earnings of such companies, but a tax on the value of their property only, in accordance with article 11, § 2, of the state Constitution. It does not, however, make the annual reports required from the companies conclusive as to such valuation, nor exclude consideration of gross earnings in making the assessment; but, on the contrary, section 17 expressly provides that they shall be considered, and authorizes the board of assessment and equalization to consider it with other information required to be furnished by the board of railway commissioners, and "any and all other matters necessary to enable them to make a just and equitable assessment," and such requirement does not render an assessment invalid.

[Ed. Note.—For other cases, see Taxation, Cent. Dig: §§ 128, 619; Dec. Dig. §§ 54, 371½.*]

2. EVIDENCE (§ 83*)—ASSESSMENT OF PROPERTY OF EXPRESS COMPANIES—PRESUMPTION OF VALIDITY.

Where the board of assessment and equalization was duly constituted, met at the time and place required by the statute, and made a valuation and assessment of the property of express companies, the presumption is that they acted on proper and competent evidence, and performed their duty in compliance with the provisions of law, and their assessment can only be overthrown by the courts on affirmative proof that it was based on fraud, or the adoption of a fundamentally wrong principle.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 105; Dec. Dig. § 83.*]

3. COMMERCE (§ 73*)—ASSESSMENT OF PROPERTY OF EXPRESS COMPANY—PROPERTY USED IN INTERSTATE COMMERCE.

While a state cannot tax the privilege of carrying on commerce among the states, nor property outside of its jurisdiction belonging to persons domiciled elsewhere, it can tax property permanently within its jurisdiction, although belonging to persons domiciled elsewhere and used in commerce among the states, as in case of express company property; and when that property is part of a system, which has its actual uses

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

only in connection with other parts of the system, that fact may be considered in taxing, even though the other parts of the system are outside of the state, in which case the value of the property within the state, in the absence of anything more special, may be determined by a mileage proportion.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 124–134; Dec. Dig. § 73.*]

**4.** EVIDENCE (§ 387*) — PAROL EVIDENCE — OFFICIAL RECORDS — CONCLUSIVE-NESS.

The record of a taxing body is the best evidence of its decisions and acts, which cannot be impeached by oral testimony of members or others as to the motives or reasons which governed the action of the members.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1698–1713; Dec. Dig. § 387.*]

**5.** TAXATION (§ 388*)—ASSESSMENT OF PROPERTY OF EXPRESS COMPANIES—LEGALITY.

The valuation and assessment of the property of express companies by the state board of assessment and equalization of South Dakota *held*, on the evidence, to have been constitutionally and legally made, and valid.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 667, 668; Dec. Dig. § 388.*]

**6.** TAXATION (§ 37*)—PUBLIC SERVICE CORPORATIONS—VALIDITY OF STATUTE.

Laws S. D. 1907, c. 64, providing for the assessment and taxation of the property of railroad and other public service corporations, is constitutional and valid.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 64–66, 133; Dec. Dig. § 37.*]

In Equity. Suits by Wells Fargo & Co. and by James C. Fargo, individually and as president of the American Express Company, against George G. Johnson, as Treasurer of the State of South Dakota. On final hearing. Decrees for defendant.

Bailey & Voorhees, of Sioux Falls, S. D., for plaintiffs.

L. T. Boucher, of Aberdeen, S. D., and Royal C. Johnson, Atty. Gen., of Pierre, S. D., for defendant.

ELLIOTT, District Judge. These actions came on for trial before the court on the 19th day of February, A. D. 1913, and were consolidated for the purpose of taking testimony and trial, though separate judgments are to be entered in them, and I will determine both cases. The bills of complaint in the two cases are substantially alike. They allege in substance:

That Wells Fargo & Co. is a corporation of the state of Colorado. That James C. Fargo, individually and as president of the American Express Company, is a resident of the state of New York. That the said American Express Company is an unincorporated association or copartnership of individuals, organized under articles of agreement between its members, under the common law of the state of New York, with its principal place of business in the city of New York, and that said company is composed of 3,000 members, owning 180,000 shares

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

in said company, of par value and a market value of $100 per share. That all such members or shareholders have a joint ownership and interest in the cause of action therein stated, and that they are too numerous to be joined as parties. That it is impractical to bring them all before the court, for the reasons stated in the bill of complaint, and therefore that he, James C. Fargo, as such president and member or shareholder, brings the suit, not only on his own behalf, but on behalf of said company and each and all of its members. That George G. Johnson was at the times named in the complaint treasurer of the state of South Dakota.

That the American Express Company and Wells Fargo & Co. for a long time prior to the time named in the complaint had been, and then were, conducting the business of a common carrier, popularly and technically described as the express business; that is to say, the quick and safe transportation and transmission over public roads and highways by means of railways, steamboats, steamships, and other public carriages, of moneys, bank bills, bonds, securities, and packages containing articles of greater or less value, as contradistinguished from ordinary freight, from points within the state of South Dakota to other points within the state, from points without the state to points within the state, and from points within the state to points without the state, also from foreign countries to the state of South Dakota, and that they do said business under contracts with railroad companies and other common carriers, owning and operating railroads, rolling stock, ships, and other public conveyances.

It is further alleged that on the 7th day of March, 1907, there went into effect in the state of South Dakota an act entitled "An act providing for the assessment and taxation of the property of railroad, telegraph, telephone, express and sleeping car companies" (Laws 1907, c. 64), and has never been repealed, and that pursuant to said statute, and especially to the provisions of section 16 thereof, the said American Express Company and Wells Fargo & Co., prior to the 1st day of July, 1910, filed in the office of the state auditor their reports for the year ending April 30, 1910, setting forth copies of such annual statement, which said annual statement it is unnecessary to set forth in full herein in either case, except to say that the statement of the American Express Company showed a total of 162 offices, the total value of office furniture, fixtures, and real estate $9,151.73, total number of miles operated, 3,383.55, and total gross earnings $88,181.44. It may be stated here that the report as made by said company fails to state the number of cars leased and operated, or owned and operated, if any, by the company, and also fails to state the total value of all the property of such company used in the state of South Dakota, as required by the fifth paragraph of said section 16 of said law.

That the statement filed by the Wells Fargo & Co. showed the total number of offices 156, total value of office furniture, fixtures, and real estate $18,473.98, total number of miles operated 1,621.52, total gross earnings $131,096.28. That the said statement did not contain any statement of the total number of express cars owned by such company and used within the state, or the number of such express cars leased and controlled, but not owned, by such companies and used

within the state, or operated under lease or contract in any manner, and it did not show the total value of all the property of such company used in the state of South Dakota, and neither of said reports gave any information with reference to the value of all the property of such companies used in the state of South Dakota as required by said statute. Such reports are duly verified, and it was further alleged that the American Express Company upon the 1st day of May, 1910, owned no property other than that specified in said report, situated in or taxable in the state of South Dakota.

It is further alleged that pursuant to the provisions of the statutes of the state of South Dakota the state board of assessment and equalization of said state of South Dakota convened in regular annual session on the 5th day of July, 1910, and continued in session until the 10th day of August, 1910. That upon the 27th day of July, 1910, said state board of assessment and equalization fixed the valuation upon the property of said American Express Company for taxation for the year 1910 at $193,260, and that on the same date said state board of assessment and equalization fixed a valuation upon the property of Wells Fargo & Co. for the year 1910 at $289,877, and thereupon said state board of assessment adjourned to meet on the 10th day of August, 1910.

It is further alleged that on the 10th day of August, 1910, Wells Fargo & Co. duly filed its protest with said board of assessment and equalization of the state of South Dakota against the assessment so made upon it, which protest is as follows:

"To the Honorable the State Board of Equalization of the State of South Dakota:

"Wells Fargo & Co. respectfully protests against the assessment made upon its property in South Dakota for the year 1910, for the following reasons:

"First. Said assessment is excessive and is many times the actual and true value of all of the property owned by Wells Fargo & Co. and subject to assessment within the state of South Dakota.

"Second. Said assessment is excessive and out of all proportion to the assessments made upon the property of other corporations and of natural persons subject to taxation within the state of South Dakota for the year 1910.

"Third. In making said assessment the state board of equalization has followed an illegal and arbitrary method of ascertaining the value of the property of Wells Fargo & Co. subject to taxation in South Dakota for the year 1910.

"Fourth. In making said assessment the state board of equalization has unlawfully taken into consideration the interstate earnings of Wells Fargo & Co., and has in effect illegally taxed the same.

"Wherefore the said Wells Fargo & Co. does respectfully pray that the said state board of equalization reconsider said assessment, and make an assessment upon the property of Wells Fargo & Co. subject to taxation in South Dakota for the year 1910 no greater than the actual and true value of said property, and no greater proportionately than the assessments made upon other corporations and upon natural persons.

"Dated August 6, 1910.

"Wells Fargo & Co.,
"By Bailey & Voorhees, Its Attorneys."

And on the same date and at the same time and place the American Express Company filed its protest in practically identical language.

It is further alleged that the said state board of assessment and equalization of the state of South Dakota ignored said protests and 'said reports, and adjourned sine die without changing the assessments so made as aforesaid upon the property of said express companies.

It is further alleged that the state board of assessment and equalization of the state of South Dakota did at its said session in July and August, 1910, upon said assessed valuation of Wells Fargo & Co. of $289,877 levy a tax against said company for the year 1910 of 28 mills, or $8,116.56.

It is further alleged that the state board of assessment and equalization of the state of South Dakota did at its said session in July and August, 1910, upon said assessed valuation of the American Express Company of $193,260 levy a tax against said company for the year 1910 of 28 mills, or $5,411.28.

It is alleged that neither the state auditor of the state of South Dakota nor the said board of assessment and equalization, nor any of its members, ever made any objection to the report above referred to, so furnished by said express companies, but that the same were received and accepted and filed by the state auditor, and the same were presented before the state board of assessment and equalization, who received and accepted them, and that no member of said board ever requested the plaintiffs, or either of them, to furnish any other or further information respecting their property and respecting the roads operated by them in addition to that contained in said reports.

The bills of complaint also allege that the matters and facts stated in said reports and in said protests are true. The provisions of chapter 64 of the Laws of the State of South Dakota of A. D. 1907 are then set forth in so far as the same refer to the payment of taxes so levied upon express companies, and the penalty that is provided in case of failure to pay within 30 days of the time the same become due, and the provision with reference to distraint of property of delinquent express companies for collection of said tax, etc.

It is alleged in the bill of complaint by Wells Fargo & Co.:

"That the said state board of assessment and equalization of the state of South Dakota, in making said assessment upon the property of your orator in the state of South Dakota, and in levying a tax thereon, willfully and fraudulently disregarded said report and said protest filed by your orator, and willfully and fraudulently disregarded the true and actual value of the property of your orator in the state of South Dakota, and that said state board of assessment and equalization arrived at said assessment and at said tax in the following manner, to wit: That said board of assessment and equalization obtained from the reports of the various railroads transacting business in South Dakota, over whose lines your orator conducted its express business, the amounts reported by said several railroads as severally paid to them for the year ending April 30, 1910, by your orator as compensation for the carriage by said railroad of its express matters, and ascertained from such reports that the amounts so paid were as follows, to wit:

Chicago, Milwaukee & St. Paul Railway Company..........$173,373 27
Chicago, Milwaukee & Puget Sound Railway Company......   7,800 45

    Total ...........................................$181,173 72"

It is alleged in the bill of complaint by the American Express Company:

"That said state board of assessment and equalization of the state of South Dakota, in making said assessment upon the property of the American Express Company in the state of South Dakota, and in levying a tax thereon, willfully and fraudulently disregarded said report and said protest filed by the said American Express Company, and fraudulently and willfully disregarded the true and actual value of the property of the said American Express Company in the state of South Dakota; that said state board of assessment and equalization arrived at said assessment and at said tax in the following manner, to wit: That said state board of assessment and equalization obtained from the reports of the various railroads transacting business in South Dakota, over whose lines the said American Express Company conducted its express business, the amounts severally paid to such railroads for the year ending April 30, 1910, by the American Express Company as compensation for the carriage by said railroads of its express matters, and ascertained from such reports that the amounts so paid were as follows:

| | |
|---|---:|
| Chicago & Northwestern Railway Company | $102,030 94 |
| Chicago, St. Paul, Minneapolis & Omaha Railway Company | 7,210 60 |
| South Dakota Central Railway Company | 2,096 32 |
| Rapid City, Black Hills & Western Railway Company | 417 70 |
| Pierre, Rapid City & Northwestern Railway Company | 6,178 99 |
| Wyoming & Missouri River Railway Company | 445 80 |
| Pierre & Ft. Pierre Bridge Company | 85 36 |
| Dubuque & Sioux City Railroad Company | 2,223 85 |
| Total | $120,689 56" |

It is thereupon alleged in both bills of complaint that certain other express companies were, during the year ending April 30, 1910, transacting business as express companies in the state of South Dakota, the same as plaintiffs. That the names of the express companies so transacting business in said state are, the United States Express Company, the Great Northern Express Company, the Western Express Company, and the Adams Express Company. That each of said express companies made reports to the auditor of the state of South Dakota of its business transacted within the state of South Dakota during the year ending April 30, 1910, and of the value of its office furniture, fixtures, real estate, and other property within the state of South Dakota, of the number of miles operated within said state, the number of offices within said state, and of its total gross earnings for business transacted within said state.

Said bills further state that the total value of all the property of said companies respectively, as shown by said reports is as follows: United States Express Company, less than the sum of $2,000; Great Northern Express Company, less than $2,000; Western Express Company, less than $500; Adams Express Company, less than $6,000.

It is further alleged by the plaintiffs in their bills of complaint that the state board of assessment and equalization obtained from the reports of the various railroad companies transacting business in South Dakota, over whose lines said various express companies other than the plaintiffs conducted the express business, the amounts severally paid to said railroad companies by said several express companies, other than plaintiffs, as compensation for the carriage by said railroads

of the express matter for said several express companies, and ascertained from said reports that the amounts reported as so paid by said express companies were as follows:

Great Northern Express Company..............................$6,626 47
United States Express Company................................. 6,812 22
Western Express Company...................................... 1,507 28

It is then alleged, upon information and belief, that the amount so reported by the railroad companies as having been paid to them by plaintiffs and the other express companies transacting business in the state of South Dakota, for express service for the year ending April 30, 1910, were not in truth and in fact the amounts charged by said railroad companies and paid by said express companies for such express service, but that said several express companies transacted business over the lines of said several railroad companies, not only in the state of South Dakota, but in the neighboring states of the United States, and that in such other states, there being a greater population and more numerous business centers, the express traffic is very greatly in excess of the express traffic between different points in the state of South Dakota.

It is further alleged that in making the reports to the said state board of assessment and equalization of the amounts paid to them for express service by the express companies transacting business in the state of South Dakota, said several railway companies did not report the amounts paid for the express service supplied in the state of South Dakota, but obtained the amounts so reported by dividing the total amount paid by the express companies for express service over the entire lines of each of said railroads by the mileage of said railroads, and then apportioned arbitrarily to the state of South Dakota an amount of the total sum paid by the express companies proportionate to the mileage of the said railroads within the state of South Dakota; that such apportionment was arbitrary, and was much greater than their business in South Dakota really earned.

It was further alleged, on information and belief: That the said state board of assessment and equalization arbitrarily determined that plaintiffs, "regardless of the amount or value of their taxable property within the state of South Dakota upon the 1st day of May, 1910, or at any time during the year ending April 30, 1910, should pay a tax of 4½ per cent. upon amounts paid by them to said railroad companies, and that the said tax should be paid by all of the express companies transacting business within the state of South Dakota. That thereupon the said state board of assessment and equalization fixed a rate of taxation upon the assessments of the various express companies transacting business in South Dakota at 28 mills upon each dollar of assessed valuation. That the said board of assessment and equalization thereupon made a further computation and ascertained the sum which would be realized by a tax of 4½ per cent. upon each dollar of the amounts paid by the several express companies to the railroad companies as aforesaid for express service, and then made a still further computation to ascertain the assessed valuation which would be necessary to obtain the same amount in taxes at a levy of

28 mills upon the dollar. That as a result of said computation said state board of equalization made assessments upon the various express companies transacting business in South Dakota, and levied taxes thereunder, as follows, to wit:

| Name of Express Co. | Amount Paid Railroads. | 4½%. | Amount of Assessment. | Amount of Tax. |
|---|---|---|---|---|
| Wells Fargo & Co. | $181,173.92 | $8,152.79 | $289,877 | $8,116.55 |
| American Express Company | 120,689.56 | 5,431.03 | 193,260 | 5,411.28 |
| United States Express Company | 6,812.22 | 306.55 | 10,899 | 305.17 |
| Great Northern Express Company | 6,626.47 | 298.19 | 11,278 | 315.78 |
| Western Express Company | 1,507.28 | 67.83 | 2,262 | 63.34 |
| Adams Express Company | | | 71,632 | |

That thereafter the Adams Express Company filed a protest, and said assessment was reduced to $40,000, and a tax of 28 mills levied thereon, amounting to $1,120.

It is further set forth in said bills of complaint, upon information and belief:

"That the said state board of assessment and equalization purposely so assessed the said American Express Company and the other express companies transacting business within the state of South Dakota that the tax levied should be practically equivalent to 45 mills upon the amount paid by the express companies to the railroad companies for express service, but made such assessment in each instance so that it would vary a few dollars from the amount required to make an assessment upon which the 28 mills tax would be exactly the equivalent of 45 mills upon the sums paid the railroad companies. That in making said assessment the state board of assessment and equalization disregarded the plain provisions of the Constitution of the United States and the Constitution of the state of South Dakota and the statutes of the state of South Dakota, and disregarded wholly the report and protest made as aforesaid by your orator, and disregarded wholly the value of the property of your orator, and disregarded wholly the value of the property owned by the other express companies within the state of South Dakota, and the reports made respectively by said express companies, and willfully and fraudulently assessed the property of your orator in the state of South Dakota in the sum of"

—$289.877 in the case of Wells Fargo & Co., and levied thereon said tax of $8,116.56, and in the sum of $193,260 in the case of the American Express Company and levied thereon said tax of $5,411.28.

The plaintiff Wells Fargo & Co. in its bill of complaint thereupon alleges in substance that it is informed and believes that it was the purpose and intent of the said state board of assessment and equalization, in making said assessment upon the other express companies within the state of South Dakota, to force them to pay a gross earnings tax of 2¼ per cent. upon the gross earnings of said plaintiff, and of said other express companies, from business transacted both wholly within the state of South Dakota and partly without said state, and within other states, that is, to impose upon said express companies a gross earnings tax of 2¼ per cent. upon all business of said express companies, both intrastate and interstate, transacted wholly or partly

within said state of South Dakota, and that to obtain such gross earnings of said, express companies the board of assessment and equalization arbitrarily assumed that the amounts reported by the railroad companies as having been paid to them by said plaintiff and the other express companies transacting business in South Dakota were 50 per cent. of the gross receipts of your orator and of said other express companies arising from their business, interstate and intrastate, in the state of South Dakota, an assumption which, in the case of your orator, at least, was not warranted by the facts.

No such allegations appear in the bill of complaint of James C. Fargo, president of the American Express Company. There is an entire absence of any such an issue made in the bill of complaint of said company, which is case No. 629. The case in which the issue is made is Wells Fargo & Co.'s, and is No. 628.

The plaintiffs thereupon both allege that the said state board of assessment and equalization, in making said assessment upon the property of the plaintiffs, and levying said tax thereon, acted without authority of law, and in violation of the law, in the particulars set forth in the bills of complaint. It is thereupon alleged that 28 mills upon each dollar of the assessed valuation was equal to the average amount of state, county, school, municipal, road and bridge, and other local taxes levied upon other property in the state of South Dakota for the year preceding the making of said assessment upon the property of the plaintiff, and was the average amount of such tax for the year for which said assessment was made in the various counties and subdivisions thereof through which plaintiffs had transacted their business respectively.

It was further alleged on information and belief that the average assessed valuation of the property, both real and personal, belonging to individuals in the state of South Dakota in the year 1910, was not to exceed 40 per cent. of the true and actual value in money of such property. It was further alleged that no assessment has been made upon the property of plaintiffs in any of the counties of the state of South Dakota by local assessing and taxing officers of such counties, or of the various municipal and other taxing organizations contained in such counties, and that no tax levy has been made against their property in the state of South Dakota for the year 1910, excepting said levy by said state board of assessment and equalization.

It is thereupon alleged that under the laws of the state of South Dakota said tax so assessed and levied by the board of assessment and equalization upon the property of plaintiffs constitutes a lien upon all of plaintiffs' personal property, and constitutes a cloud upon their title thereto, and thereupon they demand judgment, enjoining the defendant and his successors in office from distraining any property of the plaintiffs to recover the amount of said tax, or from taking any proceeding of any kind, nature, or character whatever, looking toward the collection of said tax, or toward the enforcement of the payment of said tax, and that said tax and the assessment upon which the same was based be respectively declared invalid and void, and said tax canceled.

The defendant thereupon answered said bills of complaint, in substance, demanding strict proof of the organization, principal place of business, membership of the American Express Company, the value of the shares of stock, and the residence of stockholders, and as to all matters alleged in the bill of complaint relative to the organization of said American Express Company; also of the organization, principal place of business, membership of Wells Fargo Co., value of shares of stock, and residence of stockholders. He admits that the plaintiffs had for many years conducted the business of common carrier, popularly and technically described as the express business; admits that plaintiffs neither of them own or operate any railroads, but do express business under contracts with railroad companies and through common carriers owning and operating railroads; admits that plaintiff Wells Fargo & Co. is a corporation organized and existing under the laws of the state of Colorado, and that James C. Fargo is a citizen and resident of the state of New York; admits that plaintiffs submitted statements purporting to show the condition of plaintiff companies in each county in the state as set forth in plaintiffs' bills of complaint, but denies that such statements were a full and complete statement of the property owned by said plaintiffs in the state of South Dakota during the year ending April 30, 1910; denies that said statement gave the value of all the property of plaintiffs used in the state of South Dakota during the year ending April 30, 1910; denies that the board of assessment and equalization of the state of South Dakota assessed any property of either plaintiff not within the state of South Dakota; states upon information and belief that said plaintiffs owned and used large sums of money in their business in South Dakota during the year ending April 30, 1910, and alleged that they did not report or list any money whatever for taxation in their said statements, or in any other way or manner, but fraudulently and deceitfully omitted from their said statements and concealed from the state auditor and the state board of assessment and equalization of South Dakota the fact that they had large sums of money and used large sums of money in their business in South Dakota during the year ending April 30, 1910; further alleges that the plaintiffs further violated section 16 of chapter 64 of the Laws of 1907 of the state of South Dakota, in that they fraudulently omitted from said statements to the state auditor a full and fair account of their business done within the state for the year ending April 30, 1910, and a full and fair account of the gross earnings or total business of such company transacted within the said state for the year ending April 30, 1910.

It is further alleged that the plaintiffs did a large banking exchange business in the state of South Dakota, by way of sale of and by the cashing of money orders, foreign drafts, travelers' checks, and letters of credit, and earned and used in said branch of its business large sums of money, none of which was reported by said company in its said statement to the state auditor, but all of which was fraudulently concealed by it under the fraudulent and deceitful claim that they only received money in their offices for shipment as a common carrier, while in truth and fact it did, during all of the year ending

April 30, 1910, advertise on signboards in front of its offices in this state the fact that it sold money orders, foreign drafts, travelers' checks, and letters of credit, and as a matter of fact did sell and cash such orders, checks, and letters of credit. It is further alleged upon information and belief that the plaintiffs did not list all of their property in the state of South Dakota in said statement, and did not give the true value thereof, but that the amount and value of the property belonging to the plaintiffs within the state of South Dakota was greatly in excess of the amount shown in said statements or either of them.

It was further admitted that the board of assessment and equalization convened in regular session on the 5th day of July, 1910, and continued in session as stated in the bills of complaint, and that the said board fixed a valuation upon the property of Wells Fargo & Co. for the year ending April 30, 1910, at $289,877, and upon the American Express Company at $193,260, and levied a tax thereon of 28 mills on the dollar. It is admitted that each of said companies filed a protest in the manner and form stated in the bills of complaint.

The answers further deny that said board of assessment and equalization made no objection to said reports of these plaintiffs, and allege that the said board did make objection to the reports, and did refuse to accept the same as true, for the reason that said statements did not contain a full, true, and complete statement of the property owned by plaintiffs in the state of South Dakota during the year ending April 30, 1910, in that said statements did not correctly state the true value of the property belonging to the plaintiffs within the state.

Defendant thereupon admits that the tax levied against the plaintiffs by the said board of assessment and equalization of South Dakota has not been paid, and that under the laws of the state of South Dakota he will attempt to collect the same by distraint and sale; denies that such distraint will work irreparable and lasting injury, and denies specifically that the property of Wells Fargo & Co. in the state is less in value than the sum of $18,473.98, and that the value of the property of the American Express Company was less than the sum of $10,000.

The answers thereupon specifically deny that the tax so levied by the state board of assessment and equalization was based upon the gross earnings of the plaintiffs within the state of South Dakota, or that it was based upon the amount of money paid by the said companies to the railroad companies, but upon information and belief allege the fact to be that the state board of assessment and equalization made its assessment on the property of the plaintiffs according to their value, and that said state board of assessment and equalization took into consideration the amount of gross earnings of said company within the state for the year ending April 30, 1910, as well as all other information obtainable by said board, in order to enable them to place a just and fair value upon the property of said companies, and that the assessment so made against the property of said companies was a true and just value of the property belonging to said companies within the state of South Dakota for the year ending April 30, 1910, and that the value of the tangible property of said express companies was determined by taking into consideration its capacity and adapta-

bility for the work of conducting an express business, and taking into consideration its value as a part of the entire lines of said company, and not as a segregated portion thereof, and that the gross earnings of said companies were used only together with all other information obtainable to aid the board of assessment and equalization in arriving at a just and true valuation of the property of said companies within this state, when considered in connection with the uses to which it was put, and the fact that it was a part of a highly valuable system, and that the value placed upon the property of plaintiffs within this state was only a fair, just, and equitable valuation.

The answers thereupon specifically deny that the property of plaintiffs was assessed at more than its true and actual value in money, and deny that such tax amounts to more in proportion than the tax paid by other associations, partnerships, or corporations or natural persons upon their property within the state of South Dakota. The answers thereupon allege that the method adopted by the said board of assessment and equalization in taxing the property of plaintiffs within the state of South Dakota was the same method that was employed by said board in taxing the property of all the other express companies doing business within the state at the same time, and that a fair and just valuation was sought to be and was placed upon the property of the plaintiffs.

The defendant thereupon denies all fraud or unlawful combination or confederacy or wrongdoing, wherewith he and members of the state board of assessment and equalization were by the bill charged, and averred that the plaintiffs had been guilty of fraud and of a willful disregard of the fifth subdivision of section 16 of chapter 64 of the Laws of 1907 of the state of South Dakota, in that they and each of them failed to report to the state auditor the gross earnings of the total business of such company transacted within the state of South Dakota for the year ending April 30, 1910, and the value of all the property of such company used in the state of South Dakota during said year.

The answers thereupon deny all facts not theretofore specifically admitted or answered, and demand that plaintiffs' bills of complaint herein be dismissed. To which answers plaintiffs interposed proper replies.

The defendant filed a motion to dismiss the case of James C. Fargo, individually and as president of the American Express Company, No. 629, at the time of the trial, for the reason of want of jurisdiction, in that it appeared upon the face of the pleadings that there was no diversity of citizenship and no constitutional question raised. In my view of the case this question was involved when the temporary injunction was granted in this action, and the then judge of this court disposed of this question at that time, and such ruling will not be questioned now. Upon the issues joined by such pleadings the cases were submitted upon certain stipulations as to what certain witnesses would swear to, if produced in court.

[1] Under the Constitution and laws of the state of South Dakota the property of express companies, such as plaintiffs, is taxed, and

neither the Constitution nor laws of the state provide for taxing either the gross earnings or the net earnings of such corporations. Article 11, § 2, of the Constitution of the state of South Dakota provides that:

"All taxes to be raised in this state shall be uniform on all real and personal property, according to its value in money, to be ascertained by such rules of appraisement and assessment as may be prescribed by the Legislature by general law, so that every person and corporation shall pay a tax in proportion to the value of his, her or its property. And the Legislature shall provide by general law for the assessing and levying of taxes on all corporation property as near as may be by the same methods as are provided for assessing and levying of taxes on individual property."

Pursuant to this provision of the Constitution, and for the purpose of authorizing the tax upon express companies, the Legislature of South Dakota at its regular session in A. D. 1907, passed an act entitled "Assessment and Taxation," the same being chapter 64 of the Session Laws of the state of South Dakota of A. D. 1907. Section 16 of said chapter 64 provides as follows:

"Every express company and every sleeping car company doing business in this state must transmit to the auditor of the state a statement of its business done within this state for the year ending on the 30th day of April preceding, which statement must be furnished on or before the 1st day of July of each year and shall contain the following items:

"First. The total number of employés engaged by such company within the state, and the number thereof in each county.

"Second. The total number of offices maintained by it within this state, and the number thereof in each county; the value of all office furniture, fixtures and real estate owned by it in this state.

"Third. The number of miles of railroad over which such express or sleeping car company conducts its business within the state, and the number of miles thereof in each county.

"Fourth. The total number of express cars or sleeping coaches owned by such company, and used within the state, and the number of such express or sleeping cars leased and controlled, but not owned by such company, and used within this state, or operated under lease or contract in any manner.

"Fifth. The gross earnings of the total business of such company transacted within this state for the year ending April 30th preceding, and the value of all the property of such company used in this state."

Section 17 of said statute provided:

"If the statement aforesaid shall not be received by the said auditor by the 1st day of August of each year, he shall thereupon proceed to obtain the facts and information aforesaid in any manner that may appear most likely to secure the same correctly; and for the purpose of aiding the said board of assessment and equalization in assessing the value of the property of such companies, it is hereby made the duty of the board of railway commissioners to collect information and facts concerning the value of the property of each express ard sleeping car company in this state, and to make an estimate of said value and to make and file with the state auditor on or before the 1st day of July of each year a written and detailed report of such information, facts and estimate. The state board of assessment and equalization shall on the first Monday of July each year assess all of the property of every express and sleeping car company doing business in this state and used in the operation and maintenance of its business, and in doing so shall take into consideration the gross earnings of said company within the state for the year ending on the 30th day of April preceding the statements made by said companies and by the board of railway commissioners and any and all other matters necessary to enable them to make a just and

equitable assessment of said property in the same ratio as the property of individuals.

"All the statements aforesaid and information received shall be laid before the board of assessment and equalization, which board shall review said statement and information and may change the valuation given or add to said statement any property omitted therefrom, and said board shall levy a tax upon said property, which tax shall be equal to the average amount of state, county, school, municipal, road, bridge, and other local taxes levied upon other property for the preceding year, and the auditor shall notify each company of the amount of taxes so levied."

### Section 18 provides:

"The statement of said companies required by this act shall be made according to such forms and instructions as may be prescribed by the state auditor and with reference to property owned on the first day of May of the year for which the return is made. * * *"

It is therefore clear that under the provision of both the Constitution of the state and the laws of the state of South Dakota quoted, provision was made for taxing the *property* of express companies, and no provision was attempted to be made for taxing the income, either gross or net. It is admitted by the pleadings, and was conceded upon the trial of the case, that the board of equalization named in said statute met on the 5th day of July, A. D. 1910, for the purpose of fixing a value upon the property of express companies, and continued in session until August 10, 1910. It is conceded upon the face of the bill of complaint, at page 4:

"That upon the 27th day of July, 1910, the said state board of assessment and equalization of the state of South Dakota fixed a valuation upon the property of the plaintiff Wells Fargo & Co., for the year 1910 at $289,877."

And at page 6 it is further admitted:

"That upon said assessed valuation of $289,877 the said state board of assessment and equalization of the state of South Dakota did at its said session in July and August, 1910, levy a tax against plaintiff for the year 1910 of 28 mills upon said assessed valuation, or $8,116.56."

It is admitted upon the face of the bill of complaint in behalf of the American Express Company at page 5 that:

"Said state board of assessment and equalization of the state of South Dakota fixed a valuation upon the property of said American Express Company for taxation, for the year 1910, at $193,260."

And at page 6 it is further admitted:

"That upon said assessed valuation of $193,260 the said state board of assessment and equalization of the state of South Dakota did at its said session on the 10th day of August, 1910, levy a tax against the said American Express Company for the year 1910 of 28 mills upon said assessed valuation, or $5,411.28."

This board of assessment and equalization is provided for by said chapter 64, the time and place for making the assessment is provided, and it is provided that a majority of the members of that board shall constitute a quorum and have authority to act. It will be noted that by the provision of section 16 of the statute above quoted the plaintiffs were required to furnish a statement containing the items named in subdivisions first to fifth, inclusive, of that section.

It is maintained by the plaintiffs in these cases, in substance, that it is the intent and purpose of the law that this statement shall be furnished and that the same shall be accepted by the board of assessment and equalization as the value of the property of such company for the purpose of assessment and taxation.

In the first place, the plaintiffs neither of them complied with subdivision 5 of section 16, in that neither company in the statement so furnished gave "the value of all the property of such company used in the state" at the date of the statement.

In the second place, no special legal effect is given to such statement. State ex rel. American Express Co. v. State Board of Assessment & Equalization, 3 S. D. 338, 53 N. W. 192. It was held by the Supreme Court of the state of South Dakota in the case cited that such statement, or information obtained otherwise, if no statement is transmitted, is required to be laid before the board for review, and from it and all other matters necessary to enable the board to make a just and equitable assessment, including the gross earnings of the company, such board shall value and assess said property.

The Supreme Court was in that case construing the law of 1891, and it will be noted that the law of 1907 makes additional provision for aiding the state board of assessment and equalization in ascertaining the value of the property of such companies, and it is by section 17 made the duty of the board of railway commissioners to collect information and facts concerning the value of the property of each express company in the state, and to make an estimate of said value, and to make and file with the state auditor, on or before the 1st day of July of each year, a written and detailed report of such information, facts, and estimate. This additional provision is again noted in the second paragraph of said section, which is as follows:

"The board of assessment and equalization shall on the first Monday of July of each year assess all the property of every express * * * company doing business in this state and used in the operation and maintenance of its business, and in doing so shall take into consideration the gross earnings of said company within the state for the year ending on the 30th day of April preceding the statements made by said companies, *and by the Board of Railway Commissioners*, and any and all other matters necessary to enable them to make a just and equitable assessment of said property in the same ratio as the property of individuals."

All such statements and information are required by said section to be laid before the board of assessment and equalization, and that board is required to review the same, and it is provided that it may change the valuation given, or add to the statement any property omitted therefrom, and the board is specifically charged with levying a tax upon said property which shall be equal to the average amount of state, county, school, municipal, road, bridge, and other local taxes levied upon other property for the preceding year.

I do not consider the decision of the Supreme Court of the United States in U. S. Express Co. v. Minnesota, 223 U. S. 335, 32 Sup. Ct. 211, 56 L. Ed. 459, necessarily implies that under this statute of South Dakota an income tax, gross or net, is permited. A different question would be presented if the state had by legislative act provided for such

a tax without an amendment to the Constitution of the state. It is not necessary to determine that question here. It is sufficient to say that I am of the opinion that under this constitutional provision, and the statute enacted pursuant to such provision, the board of assessment and equalization is specifically charged with levying a tax upon the property, etc., of the express companies, as above indicated.

The Supreme Court of the state of South Dakota having specifically held that "no special legal effect is given to this statement filed by the companies," the complaint of these plaintiffs that such statements were ignored by the board of assessment and equalization is without merit.

[2] The real question to be determined, as I understand it, is whether or not the state board of assessment and equalization assessed the property of the plaintiffs at the sums above stated, in the manner provided by said chapter 64 of the Session Laws of A. D. 1907, or did said board fail to regularly pursue its authority under the Constitution of the state and said chapter 64 of the Session Laws of 1907 of the state of South Dakota, and fix a value either upon the gross income, the net income, or the amounts paid by the express companies to the railway companies as reported by the railway companies for the year ending April 30, 1910.

There is an absolute want of power under the Constitution of the state and the laws of the state above quoted in the said board of assessment and equalization to levy a tax for the year ending April 30, 1910, upon the plaintiffs and other express companies in any manner other than upon a valuation of the property of said companies within the state of South Dakota. And in determining that value, under the provisions of the law of the state of South Dakota. said board is required to take the statements transmitted by the express companies, and shall take into consideration the gross earnings of such companies within the state for the year ending on the 30th day of April preceding the statements, and the estimates of the value of the property of said express companies made and filed with the state auditor by the board of railway commissioners, *and any and all other matters necessary to enable them to make a just and equitable assessment of said property in the same ratio as the property of individuals.*

It therefore becomes important to consider what the record is in these cases upon which this question of the manner in which this assessment was made must be determined. It was conceded upon the trial. and is admitted in the pleadings, that the board was regularly constituted, that an assessment was made at the time and place named in the statute, that a valuation was fixed upon the property by the board, and that, although a protest was filed by the plaintiffs, it was not allowed. It being admitted that this board of assessment and equalization was constituted under the laws of the state of South Dakota, under the provisions of said chapter 64, it clearly had the authority to value and assess the property of the plaintiffs within the state of South Dakota.

It being admitted that they met at the time and place named in the statute, and that they made a valuation and assessment of the prop-

erty of the plaintiffs in the sums above named, *presumptively* the board did its duty, and arrived at that conclusion only after having performed that duty in compliance with the provisions of law, and especially the provisions of section 17 of said chapter 64 of the Session Laws of A. D. 1907. And therefore the presumption follows that said board of assessment and equalization adopted the basis for making said assessment provided by the Constitution of the state and said chapter 64 of the Session Laws of A. D. 1907 of the state of South Dakota.

In making such assessment the board had the right to take into consideration the gross earnings of said company within the state for the year ending the 30th day of April, 1910, the statements made by the companies, and the estimate of the value of the property of plaintiffs made and filed with the state auditor by the board of railway commissioners, and any and all other matters necessary to enable them to make a just and equitable assessment of the property in the same ratio as the property of individuals. In making this assessment they had a right to take into consideration the contracts of the plaintiffs with the railroad companies, and in fixing the value of the property and making the assessment the said board is authorized to take into consideration *any and all matters that enable them to make a just and equitable assessment.*

The law has placed no limitation upon the board as to the matters they shall take into consideration, and the court can impose none. The court cannot substitute its own judgment for that of the board of assessment and equalization as to what is the assessable value of plaintiffs' property. By this assessment the board has found that the total value of the property of the plaintiffs is as above stated. In fixing its value, the board presumably had before it such evidence as the law requires, and its decision is binding upon the courts. Land Co. v. Gowen (C. C.) 48 Fed. 771; State ex rel. Am. Ex. Co. v. St. B. of A. & E., 3 S. D. 338, 53 N. W. 192.

In a suit of this nature this court will not consider complaints as to results reached by the state taxing board, except it is based on fraud or an adoption of a fundamentally wrong principle. C., B. & Q. Ry. Co. v. Babcock, Treasurer of Adams Co., Neb., 204 U. S. 585, 27 Sup. Ct. 326, 51 L. Ed. 636; Pittsburg, etc., Ry. Co. v. Backus, 154 U. S. 421, 14 Sup. Ct. 1114, 38 L. Ed. 1031; Maish v. Arizona, 164 U. S. 599, 17 Sup. Ct. 193, 41 L. Ed. 567; Adams Ex. Co. v. Ohio St. Auditor, 165 U. S. 194, 17 Sup. Ct. 305, 41 L. Ed. 683; W. U. Tel. Co. v. Taggart, 163 U. S. 1, 16 Sup. Ct. 1054, 41 L. Ed. 49; Ogden v. Armstrong, 168 U. S. 224, 18 Sup. Ct. 98, 42 L. Ed. 444.

The question of the cash valuation of the companies' property was a question of fact, the determination of which, by the Constitution of the state of South Dakota, and said chapter 64 of the Laws of A. D. 1907, was committed to the said board of assessment and equalization, and the decision of the board cannot be overthrown by evidence going only to show that the facts were otherwise than so found and determined. Pittsburg, etc., Ry. Co. v. Backus, 154 U. S. 435, 14 Sup. Ct. 1114, 38 L. Ed. 1031.

The presumption that the board did its duty implies that in making the assessment complained of it exercised its free and fair judgment and fixed a fair cash value on the property assessed in the manner provided by statute. C., B. & Q. Ry. Co. v. Babcock, 204 U. S. 585, 27 Sup. Ct. 326, 51 L. Ed. 636. This judgment of this board of assessment and equalization implies a finding of all necessary facts. The memorandum of its decision carries with it a presumption of a compliance with the provisions of the law above referred to under which the board was acting. Fayerweather v. Ritch, 195 U. S. 276, 25 Sup. Ct. 58, 49 L. Ed. 193.

The court cannot assume that the state contemplated the taxation of any property outside its territorial limits, or that its statutes are intended to operate otherwise than upon persons and property within the state; nor shall it be presumed that the officers of the state, in making this assessment and valuation, violated the plain provisions of the statute when they made the assessment. Pittsburg, etc., Ry. Co. v. Backus, 154 U. S. 428, 14 Sup. Ct. 1114, 38 L. Ed. 1031.

The questions of fact involved in these assessments having been submitted for determination to this special tribunal, its decision creates something more than a mere presumption of fact, and such determination, coming into inquiry before this court, cannot be overthrown by evidence going only to show that the fact was otherwise than as determined.

If the board determined the value of the property, it cannot be overthrown by the testimony that the valuation was other than that fixed by the board, and such testimony would be competent, and can be received in this case, only because, taken in conjunction with other testimony, it might establish fraudulent conduct on the part of the board sufficient to vitiate its determination. Pittsburg, etc., Ry. Co. v. Backus, 204 U. S. 435, 14 Sup. Ct. 1114, 38 L. Ed. 1031.

The power and duty of this state board of assessment and equalization under a constitutional provision and statutes such as ours, and especially the manner in which the value of the property of corporations within the state may be ascertained, has been repeatedly defined. It may not be out of place here to refer to a few of the cases involving the elements that may be considerd by the board in fixing the value of the property of such companies for the purposes of taxation, and apply such principles to the cases in hand.

[3] It is clear that the state cannot tax the privilege of carrying on commerce among the states. Neither can it tax property outside of its jurisdiction belonging to persons domiciled elsewhere; on the other hand, it can tax property permanently within its jurisdiction, although belonging to persons domiciled elsewhere, and used in commerce among the states. When that property is part of a system which has its actual uses only in connection with other parts of the system, that fact may be considered by the board of assessment and equalization in taxing, even though the other parts of the system are outside of the state. This being true, it is held reasonable and constitutional to get at the worth of such a line, in the absence of anything more special, by a mileage proportion. The tax is a tax on property, not on the

privilege of doing the ·business, which is intended to reach the intangible value due to what may be called the organic relation of the property in the state to the whole system. Fargo v. Hart, 193 U. S. 499, 24 Sup. Ct. 498, 48 L. Ed. 761; W. U. Tel. Co. v. Taggart, 163 U. S. 1, 16 Sup. Ct. 1054, 41 L. Ed. 49.

·The statutes defining the powers of this board of assessment and equalization were conceived .and framed upon the idea that the mass of things tangible and intangible which constitute express company property are a unit and should be valued as such. State v. Savage, 65 Neb. 714, 91 N. W. ·716; State v. Back, 72 Neb. 402, 100 N. W. 952, 69 L. R. A. 447. It is enough for the state that it find within its borders property which· is of a certain value. What has caused that value is immaterial. It is protected by state laws, and the rule of all property taxation is the rule of value, and by that rule property engaged in interstate commerce is controlled, the same as property engaged in commerce within the state. Pittsburg, etc., Ry. Co. v. Backus, 154 U. S. 421, 14 Sup. Ct. 1114, 38 L. Ed. 1031.

The rule of property taxation is that the value of the property is the basis of taxation. It does not mean·a tax upon the earnings which the property makes, nor for the privilege of using the property, but rests solely upon the value. But the value of property results from the use to which it is put, and varies with the profitableness of that use, present and prospective, actual and anticipated. There is no pecuniary value outside of that which results from use. The amount and profitable character of such use determines the value. In the nature of things it is practically impossible, at least in respect to express company property, to divide its value and determine how much is caused by one use to which it is put and how much by another. It is impossible to disintegrate the value of that portion of the system of the plaintiffs operated within the state of South Dakota, and determine how much of that value springs from its use in interstate business and how much from its use in doing business wholly within the state. An attempt to do so would be entering upon a field of uncertainty and speculation, and because of this fact it is something which the assessing board is not required to attempt, and the presumption in this case upon the record made by the board of assessment and equalization is that they did not attempt to do so. The presumption is that the board found within the borders of the state of South Dakota this property of the value above stated. Cleveland, etc., Ry. Co. v. Backus, 154 U. S. 445, 14 Sup. Ct. 1122, 38 L. Ed. 1041; W. U. Tel. Co. v. Taggart, 163 U. S. 1, 16 Sup. Ct. 1054, 41 L. Ed. 49.

The valuation is not confined to the office furniture, horses, wagons, .and books of the express companies, or the contracts with the various railway companies under which they operate their system and do business, or the cars in which the same are carried, whether owned or leased, or by particular contract for the specific item of express, but includes the proportionate part of the value resulting from the combination of the means by which the business of the express companies .is carried on, the value existing to an appreciable extent throughout ·the entire domain of operation. Cleveland, etc., Ry. ·Co. v. Backus,

154 U. S. 439, 14 Sup. Ct. 1122, 38 L. Ed. 1041; Adams Ex. Co. v. Ohio, 165 U. S. 221, 17 Sup. Ct. 305, 41 L. Ed. 683.

It is, in my judgment, clearly established that the board of assessment and equalization has acted with regard to the property of these express companies which it has assessed in the manner provided by statute. It has laid a substantial tax upon them. Its judgment, under the South Dakota Constitution and statutes of the state, is final, unless for fraud, or unless the plaintiff can show that they did not in fact make an assessment of the property, but that they levied an income tax, either gross or net, or a tax upon the amounts paid to the railway companies. Missouri v. Dockery, 191 U. S. 170, 24 Sup. Ct. 53, 48 L. Ed. 133.

The plaintiffs recognize this rule, and insist that, though the record of the action of the board of assessment and equalization is regular upon its face, as a matter of fact the board willfully and fraudulently entered into a scheme to disregard the plain provisions of the statute and law of the state, and to levy a tax upon the plaintiffs in the manner set forth in their bill of complaint as follows:

"The state board of assessment and equalization of the state of South Dakota, in making said assessment upon the property of your orator in the state of South Dakota, and in levying a tax thereon, willfully and fraudulently disregarded said report and said protest filed by your orator, and willfully and fraudulently disregarded the true and actual value of the property of your orator in the state of South Dakota, and that said state board of assessment and equalization arrived at said assessment and at said tax in the following manner, to wit: That said board of assessment and equalization obtained from the reports of the various railroads transacting business in South Dakota, over whose lines your orator conducted its express business, the amounts reported by said several railroads as severally paid to them for the year ending April 30, 1910, by your orator as compensation for the carriage by said railroads of the express matters, and ascertained from such reports that the amounts so paid were as follows, to wit."

It then sets forth the amount reported paid to the railway companies in the state in the sum of $181,173.72 in the case of Wells Fargo & Co., and in the sum of $120,689.56 in the case of the American Express Co. The complaint then sets forth the names of the different express companies doing business in the state of South Dakota for that year, and the amounts paid by the express companies to the railways for carrying express, as reported by the railways to the auditor of the state of South Dakota, and alleges that the amounts so paid were as follows: Great Northern Express Company, $6,626.47; United States Express Company, $6,812.22; Western Express Company, $1,507.28. Thereupon both bills of complaint allege:

"That the state board of assessment and equalization of the state of South Dakota *arbitrarily* determined that your orator, regardless of the amount or value of its taxable property within the state of South Dakota upon the 1st day of May, 1910, or at any time during the year ending April 30, 1910, should pay a tax of 4½ per cent. upon amounts paid by it to said railroad companies, and that the same tax should be paid by all of the express companies transacting business within the state of South Dakota; and that thereupon the said state board of assessments and equalization fixed a rate of taxation upon the assessments of various express companies transacting business in South Dakota at 28 mills upon each dollar of assessed valuation."

It is further alleged:

"That the state board of assessment and equalization thereupon made a further computation and ascertained the sum which would be realized by a tax of 4½ per cent. upon each dollar of the amounts paid by the several express companies to the railroad companies as aforesaid, for express service, and then made a still further computation to ascertain the assessed valuation which would be necessary to obtain the same amount in taxes at a levy of 28 mills upon the dollar."

It is further alleged that the various sums assessed against the different companies in the state were made upon this basis. Upon this proposition absolutely no evidence was introduced by the plaintiffs to sustain their contention. The record, with all of its presumptions, stands in favor of a finding of fact that the board of assessment and equalization did tax the property of the plaintiffs at the several sums named in the manner provided by law, and that record of the board is tantamount to a finding, after a consideration of all of the elements that should have been considered by them under the provisions of the statute above referred to, and a general finding of all facts necessary to sustain the amount of the assessment. Fayerweather v. Ritch, 195 U. S. 276, 25 Sup. Ct. 58, 49 L. Ed. 193.

[4] The determination of this taxing board is a solemn record. Parties have a right to rely upon it. It should not lightly be disturbed, and ought never to be overthrown or limited by oral testimony of either of the members of the board as to what he had in mind at the time of the decision. Fayerweather v. Ritch, 195 U. S. 276, 25 Sup. Ct. 58, 49 L. Ed. 193. In this respect the action of the board does not differ from that of a jury or an umpire, if we assume that the members of the board were not entitled to the possibly higher immunities of a judge. C., B. & Q. Ry. Co. v. Babcock, 204 U. S. 585, 27 Sup. Ct. 326, 51 L. Ed. 636.

The record of the board of assessment and equalization is the best evidence at least of its decisions and acts. If the plaintiffs or other express companies wished a definite and certain ruling by this board upon the deductions which they now seek to make from the record, they could have asked for it, and could have asked to have the action of the board, or its refusal to act, noted in the record. They could then have offered evidence of just what was done after such request had been made and refused. C., B. & Q. Ry. Co. v. Babcock, supra; Fargo v. Hart, 193 U. S. 490, 24 Sup. Ct. 498, 48 L. Ed. 761; Cleveland, Cincinnati, Chicago & St. Louis Ry. Co. v. Backus, 133 Ind. 513, 33 N. E. 421, 18 L. R. A. 729.

Nothing of this kind was done, nor can the members of the board be heard to state the operations of their minds in fixing the values of the property of the plaintiffs and in making the assessment. Under the decisions above quoted this is improper, and therefore no consideration will be given to the testimony of the officers of the state who were produced as witnesses and testified and their testimony received under objection, in so far as such testimony relates to the decisions and acts of said board.

[5] In the absence of any evidence by the plaintiffs, other than the record of the assessment of the plaintiffs and the statements of the

amounts paid to the railway companies by other express companies for the same year and the amount of taxes assessed against the respective companies, these plaintiffs are left standing upon the one proposition that:

"It appears from the record in this case that no legal assessment was ever made of the property of either Wells Fargo & Co. or the American Express company for the year 1910."

It is argued that the state board of assessment and equalization in the year 1910, as a matter of fact, willfully and fraudulently disregarded the true and actual value of the property of the express companies in the state of South Dakota, and obtained from the reports of the various railroads transacting business in South Dakota, over whose lines plaintiffs conducted their express business, the amounts reported by said several railroads as severally paid to them for the year ending April 30, 1910, by plaintiffs as compensation for the carriage by said railroads of express for plaintiffs, and arbitrarily imposed a tax thereon of 4½ per cent. And it is further claimed that this was the method adopted by the board is evidenced by the assessments placed against five of the six companies transacting business in the state of South Dakota. It is conceded that the demonstration cannot be made as to the Adams Express Company, on account of a complication of the figures. And the plaintiff offers the following tabulation as a mathematical demonstration of the above claim:

| Express Company. | Amount Paid Railroads. | 4½%. | Assessment. | Tax. |
|---|---|---|---|---|
| American Express Company....... | $120,689.56 | $5,431.03 | $193,260 | $5,411.28 |
| Wells Fargo & Co............... | 181,193.72 | 8,152.79 | 289,877 | 8,116.55 |
| United States Express Company... | 6,812.22 | 306.55 | 10,899 | 305.17 |
| Great Northern Express Company.. | 6,626.47 | 298.19 | 11,278 | 315.78 |
| Western Express Company........ | 1,507.28 | 67.83 | 2,262 | 63.34 |

It is also argued that, inasmuch as the record shows that 50 to 55 per cent. of the earnings of the express companies was paid to the railroad companies, therefore the assessment made by the board was a 2¼ per cent. tax upon the gross income, or 4½ per cent. tax upon the net income.

The first objection to this is that in the cases under consideration the Wells Fargo & Co. paid the railways 55 per cent. and 4½ per cent. of 55 per cent. of their earnings would not be 2¼ per cent. of 45 per cent. conceding that that was the net earnings. I may add, too, that if figures are to be taken as a mathematical demonstration, with absolutely no proof whatever that this board used or adopted the method by which they were arrived at, they must demonstrate, and, though the variance may be slight, if there is a variance, there is no demonstration.

In the figures in the above table it will be noted that in the case of the American Express Company the tax is $5,411.28, and the 4½ per cent. computation upon the amount paid the railroads is $5,431.03,

205 F.—6

and so on down through the list. There is not a single computation that is exact, and in the case of the Great Northern Express Company the plaintiff argues that an error was made of $1,000, by adding that amount to the assessment of the Great Northern Express Company, and that instead of an assessment of $11,278 there should have been an assessment of $10,278. But there is no evidence of an error, except that plaintiffs so argue.

It will also be noted that for some reason the board of assessment and equalization valued the property of the Great Northern Express Company at more than the United States, although the latter did more business and had a greater income, thus demonstrating that the making of this assessment was not a simple matter of computation upon earnings, or the amount paid the railway companies as reported by them. And in the light of what might, should have been, and presumably was taken into consideration by this board of assessment and equalization it is rather a demonstration that one or more of the competent elements to be considered was found by said board to enhance the value of the Great Northern, and it does not sufficiently answer this situation to say that it was a mistake upon the part of the board.

It may also be remarked that an examination of the bills of complaint filed in these two cases show that in the Wells Fargo & Co. Case, No. 628, the plaintiff alleges:

"That it was the purpose and intent of said board of assessment and equalization, in making said assessment upon your orator, and in levying said tax and in making said tax upon other express companies within the state of South Dakota, to force said plaintiff and other express companies to pay a gross earnings tax of 2¼ per cent. upon the gross earnings of plaintiff and other express companies from business transacted wholly within the state of South Dakota and partly without said state and within other states; that is, to impose upon the plaintiff and said other express companies a gross earnings tax of 2¼ per cent. upon all the business of plaintiff and of said other express companies, both intrastate and interstate, transacted wholly or partly within the state of South Dakota. And that to obtain such gross earnings of plaintiff and other express companies transacting business within the state of South Dakota, the board of assessment arbitrarily assumed that the amounts reported by the railroad companies as having been paid to them by plaintiff and other express companies were 50 per cent. of the gross receipts of the plaintiff and other express companies arising from their business, interstate and intrastate, in the state of South Dakota; an assumption which in the case of plaintiff, at least, was not warranted by the facts."

No such allegations appear in the bill of complaint in the case of the American Express Company, and as a matter of fact in the case in which they do appear the record discloses that that plaintiff paid 55 per cent., instead of 50 per cent. There is not a word of evidence upon which the court could predicate a finding that the board of assessment assumed:

"That the amounts reported by the railroad companies as having been paid to them by the plaintiff and by other express companies transacting business in South Dakota were 50 per cent. of the gross receipts of the plaintiff and of said other express companies, arising from their business, interstate and intrastate, in the state of South Dakota."

An extended discussion of these figures can be of no benefit. Suffice it to say that, if the plaintiff in a case of this kind seeks to im-

peach the action of the board of assessment and equalization simply by showing that upon the face of the record they reached their conclusion and made the assessment in a manner differing from that authorized by the statute, the figures taken from the record must absolutely demonstrate the proposition relied upon, and it is not sufficient to assume that the board intended to levy a certain per cent. upon earnings, gross or net, simply because the value fixed by them is approximately a certain rate upon either the amounts paid by the express companies to the railways or upon the gross and net earnings, unless there is some evidence that such rate was in fact adopted.

This is especially true in this case, because it appears on the face of the record that these companies do other business than that for which they have paid these amounts to the railway companies. They do a money order business. This portion of their earnings is not attempted to be shown. There is absolutely nothing in this record upon which the court could make a finding of what the income of these plaintiffs was, net or gross, for the year ending April 30, 1910. It therefore conclusively appears, in my judgment, that the contention of the plaintiffs cannot be sustained.

In my judgment there is absolutely nothing in the record that justifies the plaintiffs assuming that the board of assessment and equalization ever considered 4½ per cent. of the amounts paid by the express companies to the railway companies, or 4½ per cent. upon the net income, or 2¼ per cent. upon the gross income. There is not a word of testimony that would even indicate that any such method was considered by the board of assessment and equalization, unless it be the mere fact that the value fixed upon the property of the express companies for the purpose of taxation figures out approximately that amount. But why say 4½ per cent. upon the net income, or 2¼ per cent. upon the gross income, or either per cent. upon the amount paid by the express companies to the railway companies?

It is admitted in the argument of counsel for plaintiffs that in no case does the tax levied exactly equal the amount of 4½ per cent. of the gross earnings or net earnings; but counsel says that the reason for this is that the state board of assessment and equalization in 1910 used a complicated system of computation in order to take into account the fact that 55 per cent. of the earnings of some of the express companies was shown to be paid to the railroads, and insists that the computation used by the board is intricate, but can be ascertained from the results obtained, and a showing made of the imposition upon the plaintiffs by the board of a gross earnings tax in 1910.

Counsel then proceeds to demonstrate the method by which the board arrived at the amount paid the railroad companies by the Adams Express Company, which is a matter of speculation, and in my judgment cannot reasonably be deduced from the record. He shows that the property of this express company was valued at the sum of $71,632, and was thereafter reduced by the board, upon protest filed by the company, to the sum of $40,000, and that a tax was levied in the sum of $1,120.

After assuming that a mistake was made of $1,000 in the assessment of the Great Northern Express Company, and after adjusting

the amount assumed to have been paid by the Adams Express Company to the various railroads, counsel insists that "the tax actually levied by the state board of equalization amounts to a 4½ per cent. income tax upon the aggregate amounts paid by the six express companies to the railroad companies, less 10 per cent. of 4½ per cent. of the total income," and produces the figures as follows:   Total paid railroads by the six express companies, $361,400.27; deduction of 10 per cent. of 4½ per cent. of total paid railroads, $1,626.30, leaves a balance of $359,773.97; multiplying that by 4½ per cent. gives a result of $16,189.82.

In other words, after deducting $1,000 from the assessment levied by the board upon the Great Northern Express Company, and after having by a complicated method adjusted the tax upon the Adams Express Company, and then by deducting 10 per cent. of 4½ per cent. of the sums paid by all of the companies, as modified by such adjustments, and then multiplying that by 4½ per cent. produces practically the sum total of the tax levied against all of the express companies, and because this system produces such figures counsel argues that the board pursued such method.

In the first place, the court cannot assume that a mistake of $1,000 was made by the board of assessment and equalization in the valuation of the property of the Great Northern Express Company.

In the second place, in the absence of any evidence whatever as to the method in which the valuation of the property of the Adams Express Company was arrived at by the board, the court cannot assume that the board adopted any complicated system of figures, or that they figured at all with reference to the amounts paid by said company to the railroad companies for that year.

Then again, as to the argument of plaintiff, based upon the totals paid the railroad companies, as modified by the assumption of counsel, I cannot bring myself to find that it is a mathematical demonstration upon the record that the board of assessment and equalization ever considered in any way the system or scheme outlined by counsel.

I am impressed that these contentions of the plaintiff are conclusive proof of the unreliability of either of its claims as to the manner in which this assessment was made, and amount to a demonstration that different methods of computation may have been used by the board, but are wholly insufficient to overcome the presumption that the board did its duty, in the absence of any evidence that the board used either of these methods of computation, and in the absence of any evidence that the board in any way exceeded its authority, and in the absence of evidence that it proceeded in any way except that authorized by statute.

There is nothing in the record with reference to this percentage, nor is there anything in the record that in my judgment should be construed as a suggestion that any such percentage was ever used. No matter what the valuation fixed by the board of assessment and equalization, it would be approximately some per cent., or fraction thereof, of any other given or known quantity or amount, representing net or gross income, or any other given value.

The absence in this record of any evidence showing, or any attempt to show, the gross earnings of the plaintiffs, or the net earnings of the plaintiffs, or that the board of equalization knew or attempted to ascertain either the gross or net earnings of the plaintiffs, is fatal to the claim that such earnings were attempted to be made the basis of taxation, instead of the valuation of their property as shown by the record of the board of assessment and equalization. I am convinced, beyond all doubt, that this record fails to show that "no legal assessment was ever made of the property of either of the plaintiffs for the year 1910."

Counsel for plaintiffs call my attention to the decision in this court by Judge Willard between the same parties to these actions, involving the 1909 tax upon the property of the plaintiffs. I agree with Judge Willard upon his interpretation of the provisions of the Constitution of the state and the law of the state, defining the manner in which the property of the plaintiffs should be assessed, and prescribing the authority of the board of assessment and equalization. Upon the question of fact involved, however, it is my contention that these cases present a different situation than was presented to Judge Willard in the 1909 cases, and therefore I reach a different conclusion, based solely upon the determination of the issues of fact as presented in the pleadings and the record in the cases at bar.

[6] The question of the constitutionality of chapter 64 of the Session Laws of A. D. 1907, of the laws of the state of South Dakota, must be regarded as conclusively settled for this court by the opinion of the highest court of the state of South Dakota, as announced in the case of State ex rel. American Express Co. v. State Board of Assessment and Equalization, 3 S. D. 338, 53 N. W. 192, heretofore cited. It is true the Supreme Court was then considering the provisions of chapter 14 of the Session Laws of A. D. 1891, the provisions of which were substantially like those of the present law; the provisions of the present law imposing a duty upon the railway commission to furnish certain information to the board of assessment and equalization, and providing that the same shall be considered by such board in making a valuation of the property of the express companies for the purpose of taxation.

Every statute is presumed to be constitutional. The courts ought not to declare one to be unconstitutional unless it is clearly so. If there is doubt, the expressed will of the Legislature should be sustained. Munn v. Ill., 94 U. S. 113, 24 L. Ed. 77; Home Tel. Co. v. Los Angeles, 211 U. S. 265, 29 Sup. Ct. 50, 53 L. Ed. 176. I therefore conclude that the law under which the assessment was made is valid, that the assessment of the plaintiffs for the year 1910 was made by the board of assessment and equalization at the time and in the manner provided by statute, that upon the face of this record it appears that the property of the plaintiffs was valued for assessment in the manner provided by law, and that the rate of taxation was fixed at 28 mills.

It is admitted by the pleadings that the rate of assessment was the average amount of such tax for the year for which said assessment

was made in the various counties and subdivisions thereof through which the plaintiffs transacted their business and in which their property was situated. It follows that separate judgments of dismissal, and dissolving the injunctions heretofore issued in these two cases, should be entered.

It is so ordered.