204 U. S.   Argument for Appellant, Chicago, Burlington & Quincy Ry. Co.

CHICAGO, BURLINGTON & QUINCY RAILWAY COM-
PANY *v.* BABCOCK, TREASURER OF ADAMS COUNTY,
NEBRASKA.

UNION PACIFIC RAILROAD COMPANY *v.* FINK,
TREASURER OF DOUGLAS COUNTY, NEBRASKA.

APPEALS FROM THE CIRCUIT COURT OF THE UNITED STATES FOR
THE DISTRICT OF NEBRASKA.

Nos. 215, 341.   Argued January 21, 22, 1907.—Decided February 25, 1907.

Railroad corporations attacked assessments made by a state assessing
board and sought to enjoin the collection of taxes based thereon beyond
a sum tendered, claiming that, induced by political clamor and fear, the
board had arbitrarily fixed excessive valuations and had included prop-
erty beyond the jurisdiction of the State, thus depriving the corporations
of their property without due process.   The bills charged political duress
and a consequent scheme of fraud.   The board, after declaring that it had
taken into consideration the returns furnished by the corporations and
their respective stocks, bonds, properties and earnings, fixed the total
valuations and average mileage value of property in the State and then
fixed a lower value for assessment purposes, which the corporations
claimed was arbitrary and excessive.   Members of the assessing board
were called as witnesses and cross-examined as to the operation of their
minds in reaching the valuation.   *Held,* that:
The charges of fraud and duress were not sustained.
In an independent proceeding attacking the judgment of an assessing board
it is improper to cross-examine the members in an attempt to exhibit
confusion in their minds as to the method by which the result was reached.
In a suit of this nature this court will not consider complaints as to results
reached by a state board of assessors, except those based on fraud or the
clear adoption of a fundamentally wrong principle.
In this suit it does not appear that the present Union Pacific Railroad Com-
pany has any United States franchises which were taxed by the State of
Nebraska or improperly considered in estimating the assessment for taxa-
tion of the company's property in that State.

THE facts are stated in the opinion.

*Mr. Charles J. Greene,* with whom *Mr. James E. Kelby*
and *Mr. Charles F. Manderson* were on the brief, for appellant,
Chicago, Burlington & Quincy Railway Company:

The proceeding is void because the Board acted arbitrarily

and in disregard of the express provision of the statute. In ascertaining the total valuation of the complainant's lines of railroad in the State, it failed to give any consideration to the sworn statements, schedules and other information required by the statute and without using any statutory or other recognized rule or method of obtaining such valuation. In fixing and returning the assessed valuation per mile of complainant's lines of railroad in each county, the Board disregarded the express provisions of the statute. Had the Board regarded the statute a difference of opinion would have been impossible, because the discretionary powers vested in it would have been exhausted in the act of fixing the value of the entire property. The average value per mile would have been merely a matter of arithmetic which not even the members of an assessing board could reasonably differ about.

The statutes defining its powers, jurisdiction and duties were conceived and framed upon the idea that the mass of things tangible and intangible which constitute a railroad property are a unit and should be valued as a unit. *State* v. *Savage,* 65 Nebraska, 714; *State* v. *Back,* 100 N. W. Rep. 952.

The action of the Board in computing the total valuation of the property, upon the basis of the ascertained value of a mile, not only reversed the program dictated by the legislature, but it also made impossible the only intellectual process by which consideration could be given to the returns upon which the statute expressly declares the valuation should be based.

The proceedings of the state board operated to tax the complainant's property beyond the jurisdiction of the State, in violation of its rights under the Federal Constitution.

Had the Board, after finding the total value, deducted the value of outside property and applied the balance to the total mileage and apportioned it, the result would have been an average value of less than that which appellants tendered taxes upon.

This is not a mere case of overvaluation, but is an assessment made upon unconstitutional principles. While the

company as a matter of policy, made a tender of taxes based upon a fair valuation, it was not bound to do so, for the Board having acted without jurisdiction, the entire tax based upon the assessment was illegal and void. *Fargo* v. *Hart*, 193 U. S. 502, 503. See also *Norwood* v. *Baker*, 172 U. S. 269; *Ogden* v. *Armstrong*, 168 U. S. 237; *U. P. Ry. Co.* v. *Cheyenne*, 113 U. S. 527; *Pelton* v. *National Bank*, 101 U. S. 143; *Cummings* v. *National Bank*, 101 U. S. 153; *Litchfield* v. *County of Webster*, 101 U. S. 781.

*Mr. John N. Baldwin* and *Mr. Maxwell Evarts*, with whom *Mr. Robert S. Lovett* was on the brief, for appellant, Union Pacific Railway Company:

The state board took into account, considered, and in effect and in fact assessed property of the Union Pacific Railroad Company beyond the jurisdiction of the State and committed many gross errors in its calculations, and thereby imposed an unconstitutional burden on the complainant and on commerce among the States.

The rule to be followed in passing upon the validity of assessments of this character has been announced by this court, *Pittsburg &c. Ry. Co.* v. *Backus*, 154 U. S. 421.

The Board, in making the assessment complained of, did not exercise its free and fair judgment, and fix a fair cash value on the property assessed, but, intimidated, influenced and terrorized by great public clamor and tumult, fixed a value thereon largely in excess of the fair cash value.

The state board, in considering the value of the physical or tangible property of complainant as a factor to aid it in fixing the value of the railroad's property in Nebraska, arbitrarily and fraudulently fixed the value of said tangible property at an amount far above its value as shown by the undisputed evidence before it, this arbitrary action resulting necessarily in great prejudice to complainant.

The members of the Board were incompetent to place a valuation on complainant's property and committed many

gross errors in their calculations and methods of arriving at the assessment in question.

All property in the State of Nebraska other than railroad property was valued for assessment at much less than its real cash value, and all such other property, when compared relatively with railroad property, was undervalued, and a deliberate intent was shown on the part of the state board to impose an unfair burden on complainant and other railroad corporations. Said Board sitting as a Board of Equalization, after the assessment of railroad property, being fully advised of the undervaluation of property other than railroad property, and of the excessive valuation of railroad property as compared to other property, failed and refused to give force and effect to the provision of the constitution of Nebraska requiring uniformity of taxation of all property.

In respect to this matter of overvaluation of the property of the complainant and the systematic and habitual undervaluation of all other property, this case comes directly within the rules laid down in the following cases. *Cummings* v. *Bank*, 101 U. S. 153; *Poindexter* v. *Greenhow*, 114 U. S. 270, 295; *Taylor* v. *Company*, 88 Fed. Rep. 350.

The state board, in fixing the value of complainant's property, estimated the value thereof by a process known as capitalizing the net earnings, and in so doing erroneously included in said net earnings the earnings from interstate commerce and from the transportation of mail, troops and munitions of war of the United States, thereby imposing an unconstitutional burden on this complainant and on interstate commerce.

Taxation is an element of cost in the transportation of traffic, and a State may not, for its own benefit, impose a tax on interstate commerce, thereby not only obstructing the free passage of commerce, but increasing the cost of transportation of said commerce in proportion to the burden thus imposed.

So far as the tax levied for the use of the State is concerned this is not in effect a suit against the State, and this action will

lie. *Osborne* v. *U. S. Bank,* 9 Wheat. 738; *Board of Liquidation* v. *McComb,* 92 U. S. 531; *Poindexter* v. *Greenhow,* 114 U. S. 270; *Allen* v. *Railway Co.,* 114 U. S. 311; *Pennoyer* v. *McConnaughy,* 140 U. S. 1; *Reagan* v. *Farmers Loan & Trust Co.,* 154 U. S. 362; *Smyth* v. *Ames,* 169 U. S. 518; *Prout* v. *Starr,* 188 U. S. 537.

*Mr. William T. Thompson,* Attorney General of the State of Nebraska, and *Mr. Norris Brown,* with whom *Mr. M. F.*  *Stanley* was on the brief, for appellee:

When the State Board of Equalization and Assessment fixed the value of complainant's property in Nebraska, it acted judicially and its judgment cannot be assailed collaterally except for fraud or want of jurisdiction.

Courts of equity are without power to control the discretion vested in said Board by law as to the value of property for taxation purposes. *Lowenthal* v. *People,* 192 Illinois, 222; *Keokuk Bridge Co.* v. *People,* 186 Illinois, 267; *Connecting R. Co.* v. *People,* 119 Illinois, 182; *Ottawa Glass Co.* v. *McCaleb,* 81 Illinois, 562; *Jones* v. *Rushville Nat. Gas. Co.,* 135 Indiana, 595; *Senour* v. *Matchett,* 140 Indiana, 636; 1 High on Injunctions, §§ 485, 486, 490, 493; *Haywood* v. *Buffalo,* 14 N. Y. 534; *Burns* v. *Mayor,* 2 Kansas, 454; *McPike* v. *Pew,* 48 Missouri, 525; *Warden* v. *Supervisors,* 14 Wisconsin, 618; *Clark* v. *Ganz,* 21 Minnesota, 387; *City Council* v. *Sayre,* 65 Alabama, 564; *Stanley* v. *Albany County,* 121 U. S. 535; *Collins* v. *Keokuk,* 118 Iowa, 30; 1 Cooley on Taxation, 3d ed. p. 784; *State Railroad Tax cases,* 92 U. S. 575; *Pittsburg R. Co.* v. *Backus,* 154 U. S. 421; *Maish* v. *Arizona,* 164 U. S. 599; *Adams Exp. Co.* v. *Ohio State Auditor,* 165 U. S. 194; *Western Union Tel. Co.* v. *Taggart,* 163 U. S. 1; *Ogden City* v. *Armstrong,* 168 U. S. 224; *Henderson Bridge Co.* v. *Kentucky,* 166 U. S. 150; *State* v. *Dodge,* 20 Nebraska, 599; *State ex rel Bee Pub. Co.* v. *Savage,* 65 Nebraska, 714; *Coulter* v. *Louisville & N. R. Co.,* 196 U. S. 605.

The allegation in the bill of complaint charging fraud against

the State Board of Equalization and Assessment is not sustained by the evidence.

The methods authorized by the Nebraska law and followed by the State Board of Equalization and Assessment are sanctioned by the courts of the country. *State Railroad Tax cases*, 92 U. S. 575; *Pittsburg R. Co.* v. *Backus*, 154 U. S. 421; *K. C., Ft. S. & M. R. Co.* v. *King*, 57 C. C. A. 278; *Traction Company cases*, 114 Fed. Rep. 557; *Adams Exp. Co.* v. *Ohio State Auditor*, 166 U. S. 185.

The evidence shows conclusively that the property of complainants was assessed below its true and full value by the state board.

Equity will not enjoin the collection of taxes on account of the under assessment of other property by taxing officers, unless it appears that such undervaluation is the result of system, design, intention, habit, custom or agreement. *Taylor* v. *Louisville & N. R. Co.*, 88 Fed. Rep. 350; *German Nat. Bank* v. *Kimball*, 103 U. S. 732; *New York* v. *Barker*, 179 U. S. 190; *Exchange Nat. Bank* v. *Miller*, 19 Fed. Rep. 372; *Coulter* v. *Louisville & N. R. Co.*, 196 U. S. 605.

The evidence fails to show that the County Assessors and County Boards of Equalization by intention, custom, system, design or agreement undervalued property within their jurisdiction.

The evidence affirmatively shows that all property within their jurisdictions was assessed by the local taxing officers in good faith and at its full value.

The question of undervaluation of other property by the local taxing officers was adjudicated by the State Board of Equalization and Assessment, when, on the complaint of the complainant and in its presence, the State Board of Equalization passed on the valuation of lands, live stock, and other properties subject to the jurisdiction of local taxing officers. Complainant is therefore bound and cannot attack such judgment of said Board collaterally. *Coulter* v. *Louisville & N. R. Co.*, 196 U. S. 605; *Hacker* v. *Howe*, 101 N. W. Rep. (Neb.) 255.

Whenever the law vests in a special officer or tribunal the duty and power to ascertain and determine a question of fact, such decision amounts to more than a mere presumption that the fact exists, and such decision cannot be overthrown in a collateral attack by evidence tending to show that the fact was otherwise than was found and determined. *Pittsburg C. C. & St. L. R. Co.* v. *Backus,* 154 U. S. 434; *W. U. T. Co.* v. *Taggart,* 163 U. S. 1; *Adams Exp. Co.* v. *Ohio State Auditor,* 165 U. S. 229; *Coulter* v. *Louisville & N. R. Co.,* 196 U. S. 605.

The complainant in this case has not been discriminated against or denied the equal protection of the laws within the meaning of the Fourteenth Amendment to the Constitution of the United States by reason of the action of the State Board of Equalization and Assessment in assessing its property in the State of Nebraska, nor by reason of the action of the local taxing officers and local boards of equalization which assessed property other than railroads within their jurisdiction. *Coulter* v. *Louisville & N. R. Co.,* 196 U. S. 605; *King* v. *Mullins,* 171 U. S. 436; *M. & M. Nat. Bank* v. *Pennsylvania,* 167 U. S. 464; *Florida C. & P. R. Co.* v. *Reynolds,* 183 U. S. 476.

MR. JUSTICE HOLMES delivered the opinion of the court.

These are bills to declare void assessments of taxes made by the State Board of Equalization and Assessment for the year 1904, and to enjoin the collection of the same beyond certain sums tendered. The bills allege that the Board, coerced by political clamor and its fears, arbitrarily determined in advance to add about nineteen million dollars to the assessment of railroad property for the previous year, and then pretended to fix the values of the several roads by calculation. They allege that the assessments were fraudulent, and void for want of jurisdiction, and justify these general allegations by more specific statements. One is that other property in the State, especially land, was valued at a lower rate than that of the railroads. Another, of more importance, is to the effect that

the Board adopted a valuation by stock and bonds and then taxed the appellants upon the proportion of the value so reached that their mileage within the State bore to their total mileage, without deducting a large amount of personal property owned outside the State, or specially valuable terminals, etc., east of the Missouri River. The principle of this last objection was sanctioned in *Fargo* v. *Hart,* 193 U. S. 490, under the commerce clause of the Constitution, Art. I, Section 8, but later cases have decided that tangible property permanently outside the jurisdiction is exempted from taxation by the Fourteenth Amendment, *Delaware, Lackawanna & Western R. R.* v. *Pennsylvania,* 198 U. S. 341, *Union Refrigerator Transit Co.* v. *Kentucky,* 199 U. S. 194, and the Fourteenth Amendment alone, somewhat inadequately referred to, is the foundation of these appeals. Demurrers to the bills were overruled, mainly, if not wholly, on the ground of the charges of duress and fraud. Answers then were filed denying the material allegations and after a hearing on evidence the bills were dismissed.

The dominant purport of the bills is to charge political duress, so to speak, and a consequent scheme of fraud, illustrated by the specific wrongs alleged, and in that way to make out that the taxes were void. As the cases come from the Circuit Court, other questions beside that under the Constitution are open, and, therefore, it is proper to state at the outset that the foundation for the bills has failed. The suggestion of political duress is adhered to in one of the printed briefs, but is disposed of by the finding of the trial judge, which there is no sufficient reason to disturb. The charge of fraud, even if adequately alleged, *Missouri* v. *Dockery,* 191 U. S. 165, 170, was very slightly pressed at the argument, and totally fails on the facts. Such charges are easily made and, it is to be feared, often are made without appreciation of the responsibility incurred in making them. Before the decree could be reversed it would be necessary to consider seriously whether the constitutional question on which the appeals are based

was not so pleaded as part of the alleged fraudulent scheme that it ought not to be considered unless that scheme was made out. *Eyre v. Potter,* 15 How. 42, 56; *French v. Shoemaker,* 14 Wall. 314, 335; *Hickson v. Lombard,* L. R. 1 H. L. 324.

When we turn to the evidence there is equal ground for criticism. The members of the Board were called, including the Governor of the State, and submitted to an elaborate cross-examination with regard to the operation of their minds in valuing and taxing the roads. This was wholly improper. In this respect the case does not differ from that of a jury or an umpire, if we assume that the members of the Board were not entitled to the possibly higher immunities of a judge. *Duke of Buccleuch v. Metropolitan Board of Works,* L. R. 5 H. L. 418, 433. Jurymen cannot be called, even on a motion for a new trial in the same case, to testify to the motives and influences that led to their verdict. *Mattox v. United States,* 146 U. S. 140. So, as to arbitrators. *Duke of Buccleuch v. Metropolitan Board of Works,* L. R. 5 H. L. 418, 457, 462. Similar reasoning was applied to a judge in *Fayerweather v. Ritch,* 195 U. S. 276, 306, 307. A multitude of cases will be found collected in 4 Wigmore, Evidence, §§ 2348, 2349. All the often-repeated reasons for the rule as to jurymen apply with redoubled force to the attempt, by exhibiting on cross-examination the confusion of the members' minds, to attack in another proceeding the judgment of a lay tribunal, which is intended, so far as may be, to be final, notwithstanding mistakes of fact or law. See *Coulter v. Louisville & Nashville R. R. Co.,* 196 U. S. 599, 610; *Central Pacific R. R. Co. v. California,* 162 U. S. 91, 107, 108, 117; *S. C.,* 105 California, 576, 594; *State Railroad Tax cases,* 92 U. S. 575; *Cleveland, Cincinnati, Chicago & St. Louis Ry. Co. v. Backus,* 133 Indiana, 513, 542. In *Fargo v. Hart,* 193 U. S. 490, 496, 497, there was no serious dispute as to what was the principle adopted.

Again, this Board necessarily kept and evidently was expected by the statutes to keep a record. That was the best evidence, at least, of its decisions and acts. If the roads had

wished an express ruling by the Board upon the deductions which they demanded, they could have asked for it and could have asked to have the action of the Board or its refusal to act noted in the record. It would be time enough to offer other evidence, when such a request had been made and refused. See *Fargo* v. *Hart*, 193 U. S. 490, 498; *Cleveland, Cincinnati, Chicago & St. Louis Ry. Co.* v. *Backus*, 133 Indiana, 513, 542; *Havemeyer* v. *Board of Review*, 202 Illinois, 446. However, as the foregoing objections were not urged, and as the cases were discussed upon all the testimony, we shall proceed to consider them in the same way.

The facts that appear from any source are few. The Board voted first, as a preliminary step toward ascertaining the actual value of all property to be assessed, to make an estimate of the tangible property of the railroads, to be taken as one of the factors in making up the total assessment of the roads. Schedules were prepared, and it is objected that the Board added twenty-five per cent to certain items as furnished by the companies. If this be true, and it is not admitted that any figures were more than tentative, the addition seems to have been made on personal judgment and on a theory that the values given were the values the property was insured for. If mistaken, a mistake does not affect the case. The main point comes on the final assessment, to which we turn at once.

The Board expressed its result in another vote. "Having given full and due consideration to the returns furnished said Board by the several railroad companies, and having taken into consideration the main track, side track, spur tracks, warehouse tracks, roadbed, right of way and depot grounds, and all water and fuel stations, buildings and superstructures thereon, and all machinery, rolling stock, telegraph lines and instruments connected therewith, all material on hand and supplies, moneys, credits, franchises and all other property of said railroad companies, and having taken into consideration the gross and net earnings of said roads, the total amount

expended in operation and maintenance, the dividends paid, the capital stock of each system or road and the market value thereof and the total amount of secured and unsecured indebtedness [we] do hereby ascertain and fix for the purposes of taxation the full actual value, the average value per mile, and the assessable value per mile of the several roads as follows:" with a list.

The roads supplement the record by evidence that the State Treasurer, a member of the Board, on the objection being made to a paper said to exhibit the stock, bonds and floating debt of the Union Pacific, that the stock and bonds of other companies owned by the Union Pacific had not been deducted, answered, "the Board has decided that it can not make deductions for property outside of the State." This answer was in the presence of the other members of the Board. It is agreed that the paper referred to was prepared for the use of the Board. It shows a column of figures marked "Deductions for locally assessed," and amounting, when added, to 1,152,230. Then, under the head "Earnings," are the figures 398,474,068, from which is subtracted 1,152,230, giving 397,321,838, which is divided by 6,104, giving 65,092 as the quotient. This dividend is said to be shown by the coincidence of figures to have been made up of the market value of the stock of the Union Pacific, its mortgage bonds and other indebtedness, less the property locally assessed in the State, but without the deduction to which we have referred and to which the road alleges that it was entitled. The divisor is the total number of miles of the road. It is true that the valuation ultimately reached was $55,000 a mile instead of $65,092, but this is said to have been an arbitrary reduction, and did not reduce the amount sufficiently, if we were to assume that this paper furnished the basis of the tax.

But no such assumption can be made. The Board considered the paper no doubt, but so they considered a capitalization of what they understood to be the net earnings

in the State, and the value of the tangible property apart from its outside connections. Exactly what weighed in each mind, and even what elements they purported to consider in their debates, is little more than a guess. There is testimony which cannot be neglected that, in this very matter of valuing the road by stocks and bonds, etc., the Board, from another table furnished by the company, valued it at over $540,000,000, and did deduct from that sum the stocks and bonds owned by the road, and valued by the Board at over $140,000,000, prior to the subsequent reduction to $55,000 a mile. It is said that this valuation is absurd and due to misunderstanding of the table. But we have nothing to do with complaints of that nature, or with anything less than fraud, or a clear adoption of a fundamentally wrong principle. The Board, in its formal action properly before us, did vote to request of the Union Pacific, among other things, "an itemized statement of the several bonds and stocks owned by said Company, for which they are legally entitled to receive credit on offset, in estimating the value of said Company for assessment." This recognizes the true principle, almost in terms. Beyond a speculation from figures, and a few statements improperly elicited from one or two members of the Board, there is nothing to contradict the inference from this vote except the above alleged statement of the treasurer, met by his and others' testimony that a proper deduction was made.

Evidently the Board believed that the figures furnished by the roads were too favorable and were intended to keep the taxes as low as they could be kept. Evidently also the members or some of them used their own judgment and their own knowledge, of which they could give no very good account on cross-examination, but which they had a right to use, if honest, however inarticulate the premises. It would seem from the testimony, as might have been expected, that the valuations fixed were a compromise and were believed by some members to be too low, as they seemed to one too high. It is argued to us, on expert testimony, that they are too low.

The result of the evidence manifests the fruitlessness of inquiries, which, as we have said, should not have been gone into at all. We have adverted more particularly to the case of the Union Pacific, but that of the Chicago, Burlington and Quincy Railroad stands on similar and no stronger ground, and what we have said disposes of the main contention of both. If the court below had found the other way it would have been difficult to say that the finding was sustained by competent evidence. There certainly is no sufficient reason for disturbing the finding as it stands.

A point less pressed than the foregoing was that the other property in the State was greatly undervalued and that thus the rule of uniformity prescribed by the constitution of Nebraska had been violated. Upon this matter it is enough to say that no scheme or agreement on the part of the county assessors, who taxed the other property, was shown, or on the part of the Board of Equalization and Assessment, and to refer to *Coulter* v. *Louisville & Nashville Railroad Co.*, 196 U. S. 599.

Again it was said that, inasmuch as the present Union Pacific Company, a Utah corporation, acquired its road by foreclosure of a mortgage from a preceding corporation chartered by the United States, it appeared from admissions in testimony or followed from the Board's taxing the Nebraska portion of the road as a going concern that it was taxing United States franchises, contrary to the decision in *California* v. *Central Pacific R. R. Co.*, 127 U. S. 1. This also, although stated, was not pressed. It does not appear that the present Union Pacific has any United States franchises that were taxed, and, if it has any that were considered in estimating the value of the road, it does not appear that they were considered improperly under the later decisions of this court. *Central Pacific R. R. Co.* v. *California*, 162 U. S. 91; *People* v. *Central Pacific R. R. Co.*, 105 California, 576, 590. See *Adams Express Co.* v. *Ohio State Auditor*, 166 U. S. 185. And the same thing may be said as to the interstate business of the

roads. *Adams Express Co.* v. *Ohio State Auditor*, 165 U. S. 194; *S. C.*, 166 U. S. 185. The Board had a right to tax all the property in the State and to tax it at its value as an organic portion of a larger whole. *Western Union Telegraph Co.* v. *Gottlieb*, 190 U. S. 412.

Various arguments were addressed to us upon matters of detail which would afford no ground for interference by the court, and which we do not think it necessary to state at length. Among them is the suggestion of arbitrariness at different points, such as the distribution of the total value set upon the Chicago, Burlington and Quincy system, among the different roads making it up. But the action does not appear to have been arbitrary except in the sense in which many honest and sensible judgments are so. They express an intuition of experience which outruns analysis and sums up many unnamed and tangled impressions; impressions which may lie beneath consciousness without losing their worth. The Board was created for the purpose of using its judgment and its knowledge. *State Railroad Tax cases*, 92 U. S. 575; *State* v. *Savage*, 65 Nebraska, 714, 768, 769; *In re Cruger*, 84 N. Y. 619, 621; *San José Gas Co.* v. *January*, 57 California, 614, 616. Within its jurisdiction, except, as we have said, in the case of fraud or a clearly shown adoption of wrong principles, it is the ultimate guardian of certain rights. The State has confided those rights to its protection and has trusted to its honor and capacity as it confides the protection of other social relations to the courts of law. Somewhere there must be an end. We are of opinion that whatever grounds for uneasiness may be perceived nothing has been proved so clearly and palpably as it should be proved, on the principle laid down in *San Diego Land & Town Co.* v. *National City*, 174 U. S. 739, 754, in order to warrant these appeals to the extraordinary jurisdiction of the Circuit Court.

*Decrees affirmed.*

MR. JUSTICE PECKHAM and MR. JUSTICE McKENNA dissent.