WASHINGTON WATER POWER CO. v. KOOTENAI COUNTY et al.

(Circuit Court of Appeals, Ninth Circuit. February 2, 1914.)

No. 2302.

1. TAXATION (§ 449*)—ASSESSMENT—REVIEW BY COURTS—GROUNDS.

An assessment for taxation, ratified and approved by the board of equalization of the county with certain slight modifications after hearing evidence on behalf of the property owner as well as the county, would not be interfered with by the courts except for fraud or the clear adoption of a fundamentally wrong principle.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 790–799; Dec. Dig. § 449.*]

2. TAXATION (§ 449*)—SCOPE OF REVIEW.

In a suit to have an assessment for taxation declared void and to have the amount of taxes fairly and equitably due ascertained and determined by the court, where the county did not appeal from that portion of the judgment granting the relief asked as to the assessment on certain property, that matter was not open for consideration.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 790–799; Dec. Dig. § 449.*]

Appeal from the District Court of the United States for the Northern Division of the District of Idaho; Frank S. Dietrich, Judge.

Suit by the Washington Water Power Company against Kootenai County and another. From a judgment granting insufficient relief to plaintiff, it appeals. Affirmed.

John P. Gray, of Cœur d'Alene, Idaho, F. T. Post and A. G. Avery, both of Spokane, Wash., for appellant.

Robert H. Elder and N. D. Wernette, both of Cœur d'Alene, Idaho, for appellees.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

ROSS, Circuit Judge. The appellant is a corporation of the state of Washington engaged in the business of developing and distributing electrical energy for power and lighting purposes in Eastern Washington and Northern Idaho; one of its extensive power plants being at Post Falls, in Kootenai county, Idaho, consisting of various pieces and items of property, which were assessed in the year 1911 by the county assessor of Kootenai county. Claiming that such assessment was unequal, excessive, and fraudulently made by the assessor, and likewise subsequently fraudulently ratified and approved by the board of equalization of the said county, except in minor respects in which it was modified, the appellant filed in the court below its bill by which it sought the judgment of the court that the taxes levied pursuant to such assessment be declared null and void, and that the defendant county be enjoined from asserting or attempting to assert any lien upon any of the property so assessed for or on account of the taxes, and that the defendant assessor and ex officio tax collector, and his successors in office, be restrained from selling any of the said property for such taxes, and that the court "ascertain and determine what taxes

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

are fairly and equitably due upon the property of the plaintiff described in the bill of complaint, and that upon the payment thereof to the defendant tax collector, his successor or successors in office, the said defendant county, its officers and agents, be required and commanded to accept the same as in full for the taxes for the year 1911 upon the said property of the plaintiff, and to enter said taxes against said property upon the books of said county as paid in full."

[1] The general allegations of fraud against the officers of the county are followed by specific averments in respect to their acts, which it is unnecessary to set out in detail. Among other things, the bill alleges that at the regular meeting of the board of equalization of the defendant county held in the month of July, 1911, the complainant appeared and made application to it for a reduction of the values placed upon its property so assessed, and that the board heard evidence on behalf of the complainant as well as on behalf of the county, and:

"That at said hearing this plaintiff made a showing of facts and showed to the said board that the said valuations so pretended to be placed upon its said property by the said assessor were wrongful, excessive, and more than twice the actual cash value and full cash value of the property hereinbefore described, and it appealed to said board of equalization for relief. That the said matter was taken under advisement by the said board, and thereafter, and on the 28th day of July, 1911, the said board passed upon the application of this plaintiff and ordered that the assessment on a certain building located on the Indian reservation be reduced from $600 to $25, and the assessment on a branch power line in Kootenai county be reduced from 25 miles to 23 miles; and as to all of the balance of plaintiff's application and petition the said board of equalization arbitrarily, in conflict with the facts so before it, unjustly, wrongfully, and illegally declined, refused, and neglected to give to the plaintiff any relief whatever, and ordered the said assessment so pretended to have been made by the said assessor to stand as the assessment upon the plaintiff's property hereinbefore described."

The law is thoroughly settled that in such cases the courts have nothing whatever to do "with anything less than fraud, or a clear adoption of a fundamentally wrong principle" in the making of the assessment and levy. Chicago, B. & Q. Ry. Co. v. Babcock, 204 U. S. 585, 27 Sup. Ct. 326, 51 L. Ed. 636; Albuquerque National Bank v. Perea, 147 U. S. 87, 13 Sup. Ct. 194, 37 L. Ed. 91; Stanley v. Supervisors of Albany, 121 U. S. 535, 550, 7 Sup. Ct. 1234, 1239 (30 L. Ed. 1000), in which latter case the court said, among other things:

"In nearly all the states, probably in all of them, provision is made by law for the correction of errors and irregularities of assessors in the assessment of property for the purposes of taxation. This is generally through boards of revision or equalization, as they are often termed, with sometimes a right of appeal from their decision to the courts of law. They are established to carry into effect the general rule of equality and uniformity of taxation required by constitutional or statutory provisions. Absolute equality and uniformity are seldom, if ever, attainable. The diversity of human judgments, and the uncertainty attending all human evidence, preclude the possibility of this attainment. Intelligent men differ as to the value of even the most common objects before them—of animals, houses, and lands in constant use. The most that can be expected from wise legislation is an approximation to this desirable end; and the requirement of equality and uniformity found in the Constitutions of some states is complied with, when designed and manifest departures from the rule are avoided.

"To these boards of revision, by whatever name they may be called, the citizen must apply for relief against excessive and irregular taxation, where the

assessing officers had jurisdiction to assess the property. Their action is judicial in its character. They pass judgment on the value of the property upon personal examination and evidence respecting it. Their action being judicial, their judgments in cases within their jurisdiction are not open to collateral attack. If not corrected by some of the modes pointed out by statute, they are conclusive, whatever errors may have been committed in the assessment. As said in one of the cases cited, the money collected on such assessment cannot be recovered back in an action at law, any more than money collected on an erroneous judgment of a court of competent jurisdiction before it is reversed.

"When the overvaluation of property has arisen from the adoption of a rule of appraisement which conflicts with a constitutional or statutory direction, and operates unequally not merely on a single individual but on a large class of individuals or corporations, a party aggrieved may resort to a court of equity to restrain the exaction of the excess, upon payment or tender of what is admitted to be due."

On the trial of the present case in the court below a large amount of evidence was given on behalf of the respective parties, which was manifestly very carefully considered by the learned trial judge, resulting in findings by him to the effect that the charges of fraud contained in the bill were not sustained by the evidence, and also in findings to the effect that there was a large overvaluation in some of the assessments, which included, among others, these two items, "Bear-trap dam and small dam at Post Falls, 562,500.00," and, "Railway spur and bridge, 48,750.00"—the aggregate of the whole assessment made being $2,529,250, while the court found the aggregate cash value of the whole of the property to be $1,718,636.37.

The trial judge found that the two dams above mentioned were overvalued in the assessment to the extent of $386,229, and that the railway spur and bridge were likewise overvalued to the extent of $28,954.61, and that such overvaluations were so gross, and the manner of making them so unreasonable, that the complainant was entitled to protection against the taxes on those overvaluations, which protection it gave by the decree entered, denying the complainant the relief prayed in all other respects.

[2] As there is no appeal on behalf of the county from that portion of the judgment awarding the complainant the limited relief mentioned, that matter is not for our consideration. And being of the opinion that the evidence would not justify us in disturbing the findings of the trial court to the effect that there was no fraud on the part of the officers of the county in either the making or the approval of the assessments, and would not justify us in holding that they were made under any fundamentally wrong principle, we must affirm the judgment.

Judgment affirmed.