*In re* PETITION OF MACOMB COUNTY
DRAIN COMMISSIONER.

PEOPLE, *ex rel.* STATE HIGHWAY COMMISSIONER, *v.*
MACOMB COUNTY DRAIN COMMISSIONER.

1. DRAINS—INTRACOUNTY DRAINS—PUBLIC CORPORATION—REVIEW OF PROCEEDINGS.

Proceedings under chapter of drain code relative to establishment of intracounty drains whose cost is assessable wholly against public corporations, including the State, are special and summary, and action of the appointed drainage board is reviewable only by certiorari (CLS 1956, § 280.461 *et seq.,* as amended).

2. SAME—INTRACOUNTY DRAINS—PUBLIC CORPORATIONS—HEARINGS ON APPORTIONMENT—OATHS—EVIDENCE—CERTIORARI.

The drainage board for an intracounty drain whose entire cost is to be borne by public corporations may administer oaths and hear testimony of sworn witnesses at hearings before issuance of final orders of apportionment, notwithstanding per-

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 17A Am Jur, Drains and Sewers § 22 *et seq.*
[3, 4, 5, 6, 7, 8] 17A Am Jur, Drains and Sewers § 60 *et seq.*
[9] 2 Am Jur 2d, Administrative Law § 625.
[10] 14 Am Jur, Costs § 23.

tinent statutory provisions do not specifically provide therefor, in view of the fact that review of the exercise of such quasi-judicial powers is provided by the writ of certiorari (CLS 1956, §§ 280.467–280.469, 280.483, as amended by PA 1961, No 45).

3. SAME—PUBLIC CORPORATIONS—SPECIAL ASSESSMENT—APPORTIONMENT.

It is within the power of the legislature, directly or by delegation, to establish special assessment districts for drains for public corporations, to provide for the determination of the amount of the special assessment, and set forth the rule of apportionment, and where the rule of apportionment is according to the benefits derived and the extent to which each public corporation contributes to the conditions which make the drain necessary, the application of that rule may be effected by the employment of any method which will accomplish that purpose which does not lose sight of the fundamental basis of special assessments for drains (CLS 1956, §§ 280.467–280.469).

4. SAME—APPORTIONMENT—DISCRETION OF INTRACOUNTY DRAINAGE BOARD—COURTS—RECORD.

It is not for a court in reviewing, by certiorari, the apportionment by an intracounty drainage board of the cost of a drain assessable against public corporations only, in the absence of fraud or a clear showing of the adoption of wrong principles, to set up its judgment in opposition to that of the board, where there is nothing in the record to show that the apportionment against any public corporation was not within their best judgment (CLS 1956, §§ 280.467–280.469).

5. SAME—INTRACOUNTY DRAINS—PUBLIC CORPORATIONS—DISCRETION OF BOARD—PRESUMPTIONS—GOOD FAITH.

Administrative determinations in apportionment of assessments of the estimated cost of intracounty drains payable only by public corporations are presumed to have been made in good faith and to have been a correct and faithful exercise of the discretion of the drainage board, in the absence of fraud or the clearly shown adoption of wrong principles (CLS 1956, §§ 280.467–280.469).

6. SAME—INTRACOUNTY DRAINAGE BOARD—APPORTIONMENT OF ASSESSMENT—HIGHWAYS.

Apportionments of 16% and 13% of the assessments for cost of 2 intracounty drains against the State for expressway crossing the drainage districts which the State highway commis-

sioner asserted, but failed to prove or show amount by which the highway was admittedly substantially benefited, affirmed by dismissal of writs of certiorari, are affirmed on appeal, where record fails to show error in the intracounty drainage board's exercise of its discretion (CLS 1956, § 280.468, as amended by PA 1961, No 45).

7. SAME—INTRACOUNTY DRAINAGE BOARD—CROSS-EXAMINATION OF EMPLOYEES—OBJECTIONS TO APPORTIONMENT FOR STATE HIGHWAY.
   Objections to apportionment against State for assessments for cost of 2 intracounty drains which were crossed by an expressway in low, flat country were not supportable by attempted cross-examination of engineers and employees of the intracounty drainage board, where no fraud is alleged (CLS 1956, § 280.468, as amended by PA 1961, No 45).

8. SAME—INTRACOUNTY DRAINS—STATE HIGHWAYS—APPORTIONMENT OF ASSESSMENTS—DISCRETION OF INTRACOUNTY DRAINAGE BOARD.
   Apportionment of assessments for cost of intracounty drains by intracounty drainage board levied against the State solely for the drainage of State highways restricts the power of such a board in its apportionment of assessments but does not relieve the State from showing by proof, approximate or exact, that the apportionment according to benefit as made by the board was not a proper exercise of its discretion (CLS 1956, § 280.468, as amended by PA 1961, No 45).

9. ADMINISTRATIVE LAW—DISCRETION OF OFFICERS—CERTIORARI.
   An administrative determination which by the laws of necessity must be based in part on the vagaries of weather over a long period of years is immune from substitution, on certiorari, of judicial opinion and judgment for that of statutorily appointed administrators.

10. COSTS—INTRACOUNTY DRAINS—APPORTIONMENT OF ASSESSMENT AGAINST STATE.
    No costs are allowed on appeal by State from orders quashing writs of certiorari to intracounty drainage board and confirming its orders apportioning 16% and 13% of assessments for cost of 2 intracounty drains as share of State whose expressway crossed the drains in low, flat country (CLS 1956, §§ 280.467–280.469).

Appeal from Macomb; Spier (James E.), J. Submitted March 7, 1963. (Calendar Nos. 81, 82, Docket Nos. 49,950, 49,951.) Decided April 5, 1963.

In the matter of petitions to the Macomb County Drain Commissioner for the establishment of the Eight and One-Half Mile Relief Drain and the Stephens Relief Drain.

Certiorari by the People of the State of Michigan and its Attorney General, on the relation of John C. Mackie, State Highway Commissioner, against Thomas S. Welsh, Macomb County Drain Commissioner, and others, comprising the Macomb County Intracounty Drainage Board for the Eight and One-Half Mile Relief Drain, to review final order of apportionment of costs of drain.

Similar action in respect to apportionment of costs of the Stephens Relief Drain.

Actions heard together in circuit court and consolidated on appeal. Writs quashed and order of apportionment confirmed. Plaintiffs appeal. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Louis J. Caruso* and *Florence N. Clement,* Assistant Attorneys General, for plaintiff.

*John H. Yoe (Dickinson, Wright, McKean & Cudlip,* of counsel), for defendants.

Black, J. The procedural nature of chapter 20 of the drain code of 1956 (CLS 1956, § 280.461 *et seq.* [Stat Ann 1960 Rev § 11.1461 *et seq.*]) was presented in comprehensive summary by Chief Justice Carr shortly after the chapter (formerly chapter 18A of PA 1923, No 316, as added by PA 1951, No 265) had been incorporated in the code.[1] See *Con-*

---

[1] All references by section numbers are to sections as they appear in chapter 20 as amended by PA 1957, No 37 and PA 1961, No 45. See CLS 1956, § 280.461 *et seq.,* as amended (Stat Ann 1960 Rev and Stat Ann 1961 Cum Supp § 11.1461 *et seq.*).—Reporter.

*nor* v. *Herrick,* 349 Mich 201, 212, 213. A portion of that summary, quoted as follows, will introduce the ensuing opinion:

"Public hearing on the apportionment of the cost of the drain, or improvement thereof, is required to be held, with due notice by publication in a newspaper and by registered mail to the public corporations proposed to be assessed. Proceedings in certiorari may be instituted within 20 days after the filing of the final order of determination or of the order of apportionment. Following the confirmation of such apportionment the chairman of the board, the drain commissioner of the county, is required to prepare a special assessment roll, based either on the estimated cost of the drain or the actual cost thereof, if ascertained, against the several public corporations directed to be assessed. Such assessments may be ordered paid in annual instalments, not exceeding 30. After the approval of the assessment roll the chairman of the drainage board is directed to certify to each public corporation assessed the total amount of such assessment with the number of instalments and the rate of interest upon instalments unpaid when due. Assessments against the State are certified to the State highway commissioner and paid from State highway funds. It is made the duty of tax levying officials of the public corporations assessed to levy sufficient taxes to pay the assessment instalments and interest as the same become due."

Before us are what is known as chapter 20 drain cases. They have arrived on granted leave to review circuit court orders quashing certiorari to the appellee Macomb County Intracounty Drainage Board.

The land surface of south Macomb county lying immediately north of the northerly limits of Detroit and adjacent to Lake St. Clair is low and flat. Most of it is barely above the high water level of the lake.

Drainage is difficult excepting at great cost. Swiftly changing in recent years from lake front life and agricultural use to concentrated city, village, and residential development, the area presents an emergency need for storm water drainage and disposition of sanitary sewage; a need compounded by the planned and presently outlined expressway construction. To meet such need these proceedings were instituted.

Two separate yet closely allied drain projects are involved. They are contiguous and generally parallel. Together, they are designed to drain an aggregate of more than 8 square miles of heavily populated areas in addition to specified county roads and most of the traversing portion—northward through south Macomb county—of the Edsel Ford Expressway. The southernmost project is designated as the Eight and One-Half Mile Relief Drain. The other is designated as the Stephens Relief Drain. Each will extend from west to east with outlets into Lake St. Clair designed about a mile apart.

The judicial problem arises from the planned construction—directly athwart the courses of both drainage areas—of the depressed expressway; a huge collector of storm water which must be drained with engineered speed during steady or torrential downpours; and from the final apportionment orders the board issued under section 469 (CLS 1956, § 280.469 [Stat Ann 1960 Rev § 11.1469]).

Concededly due proceedings under chapter 20 were pursued up to the time and occasion appointed by section 469 for hearing of "objections to such apportionments." The appellant State, one of the statutorily designated "public corporations" (see section 461 [CLS 1956, § 280.461, Stat Ann 1960 Rev § 11.1461]), had previously filed formal and rather

conclusionary objections.[2] Such objections were pressed with vigor upon the drainage board during each section 469 hearing. As the respective hearings proceeded it became clear to all participants, as it does to us through print, that the State's real objection was that the tentative apportionments—as confirmed by the reviewed final orders of apportionment —excessively mulcted the State as a matter of law. As against such objection the drainage board confirmed the then tentative figures and entered orders assessing the State highway fund 16% plus, or $1,918,810, of the estimated cost of the Eight and One-Half Mile Relief Drain and 13% plus, or $832,943, of the estimated cost of the Stephens Relief Drain.

The attorney general thereupon sued out certiorari in the Macomb circuit to review such orders. The circuit judge, following due trial of the issues presented by the attorney general's respective petitions, quashed each writ and ordered confirmation. As indicated above, the attorney general has brought both circuit court orders here for review.

Proceedings under chapter 20 are special and summary. In the nature of their purpose such proceedings must so advance, provided due notice and opportunity to be heard are supplied, as they were here. Much in the way of quasi-legislative and quasi-judicial authority is vested by law[3] in the appointed drainage board with indicative corollary that, to the extent its doings are reviewable only within the

[2] The objections, filed with aim at the tentative apportionments, alleged (a) that "The apportionments against the State are not based solely upon the drainage of State highways as required by law", and (b) that "The apportionments fail to take into consideration the benefits to accrue to each public corporation and the extent to which each public corporation contributes to the conditions which make the drain necessary." Detail of the attorney general's argument in support of such objections will appear later.

[3] Chapter 20 was found constitutional, as against presented constitutional questions, in *Black Marsh Drainage District* v. *Rowe,* 350 Mich 470.

limits of the constitutional writ of certiorari (see section 483 [CLS 1956, § 280.483, Stat Ann 1960 Rev § 11.1483]), so must the legislatively provided quasi-judicial powers of the board be deemed enlarged.

Sections 467 through 469 of chapter 20 (CLS 1956, §§ 280.467–280.469, as amended [Stat Ann 1960 Rev and Stat Ann 1961 Cum Supp §§ 11.1467–11.1469]) provide little light upon the hearing duties and functions of the drainage board. We are not advised of legislative intention that the board may or should administer oaths and hear the testimony of sworn witnesses. Our decisions, however, fill such crevices as are necessary for determination of the questions brought into circuit by the writ. We turn to them for adoptive analogies.

In another thoughtfully analyzed special assessment case this Court summed up its previous holdings in these words (*Cummings* v. *Gardner,* 213 Mich 408, 433):

"It is the province of the legislature, directly or by delegation, to establish the special assessment district, determine the amount of the special assessment, and the rule of apportionment. Where the rule of apportionment is according to the special benefits derived, the application of that rule may be effected by the employment of any method which will accomplish that purpose, whether it be by valuation, frontage, superficial area or any other method which does not lose sight of the fundamental basis of special assessments for local improvements. The authorities abundantly support this conclusion. If the determination of the rule is within the recognized power of the legislature, then, how that rule shall be applied is clearly within its authority."

In the same context it was said (*Marks* v. *City of Detroit,* 246 Mich 517, 523; quoting from *Brown* v. *City of Grand Rapids,* 83 Mich 101, 109):

" 'It is not for this Court to set its judgment up in opposition to that of the board of commissioners and the council, and to say that this parcel of land or that is assessed too much or too little. The assessments were to be made according to benefits to each parcel of property, and there is nothing in the record showing that the commissioners did not assess the complainant's lands in accordance with their best judgment.' "

The quoted rule is universal, and may be found in consistent application throughout our reports. It is based, of course, on a presumption of law which arises from the necessities of general and special taxation and the want of judicial equipage to decide what at best is administrative judgment formed of estimation. The presumption, declared and redeclared many times since, appeared first in *Powers* v. *City of Grand Rapids,* 98 Mich 393, 397:

"The presumption is that, in making the district and the assessment, the officers of the municipality acted in good faith, and have correctly and faithfully exercised the discretion reposed in them. In such case, where mistake or abuse of discretion is not manifest or demonstrable, the determination of the municipal officers in whom such discretion is vested is conclusive, and it is not reviewable by the courts. 1 Dillon, Municipal Corporations § 94."

Mr. Justice Holmes, writing in a like case relied upon here more than 30 years ago (*Lowrie,* presently cited and quoted), covered the whole topic by conclusion of *Chicago, B. & Q. R. Co.* v. *Babcock,* 204 US 585, 598 (27 S Ct 326, 51 L ed 636). This is the Justice's law-school-familiar "Somewhere there must be an end" opinion. We quote (p 598):

"Various arguments were addressed to us upon matters of detail which would afford no ground for interference by the court, and which we do not think it necessary to state at length. Among them is the

suggestion of arbitrariness at different points, such as the distribution of the total value set upon the Chicago, Burlington and Quincy system, among the different roads making it up. But the action does not appear to have been arbitrary except in the sense in which many honest and sensible judgments are so. They express an intuition of experience which outruns analysis and sums up many unnamed and tangled impressions; impressions which may lie beneath consciousness without losing their worth. The board was created for the purpose of using its judgment and its knowledge [citing cases]. Within its jurisdiction, except, as we have said, in the case of fraud or a clearly shown adoption of wrong principles, it is the ultimate guardian of certain rights. The State has confided those rights to its protection and has trusted to its honor and capacity as it confides the protection of other social relations to the courts of law. Somewhere there must be an end. We are of opinion that whatever grounds for uneasiness may be perceived nothing has been proved so clearly and palpably as it should be proved, on the principle laid down in *San Diego Land & Town Co.* v. *National City,* 174 US 739, 754 (19 S Ct 804, 43 L ed 1154), in order to warrant these appeals to the extraordinary jurisdiction of the circuit court."

*First:* Pointing to technically engineered details of each project, the attorney general lays stress upon the following italicized portion of section 468 (CLS 1956, § 280.468, as amended by PA 1961, No 45 [Stat Ann 1961 Cum Supp § 11.1468]), viz:

"The drainage board shall then proceed to tentatively establish the percentage of the cost of such drain which is to be borne by each public corporation. In making the apportionments hereunder, there shall be taken into consideration the benefits to accrue to each public corporation and also the extent to which each public corporation contributes to the conditions which make the drain necessary. *Apportionments*

*against the State shall be based solely upon the drainage of State highways,* and those against the county shall be based solely upon the drainage of its county highways";

and says that "The chapter 20 drainage board's final orders of apportionment charge the State for areas not to be drained and for facilities which serve no highway purpose." In support it is alleged that "the expressway is not designed to discharge any drainage to the Eight and One-Half Mile Relief Drains"; that the State is charged "for sanitary sewage retention facilities which are not for drainage of State highways," and that the attacked orders "are based upon the arbitrary and capricious selection and use" of erroneous "runoff factors."

The initial trouble with these contentions is that no helpful proof beyond the factual asseverations of counsel was offered to sustain them. True, the statute does not authorize the administration of oaths and the hearing of sworn testimony. But it does not prohibit proof by affidavit or court-authorized deposition, and we find that the 2 affidavits the attorney general actually offered were received by the board and made a part of the record.[4] Aside from these considerations it appears on fair reading of chapter 20 that it imposes a duty on an objector who says his assessment is too high to establish by some proof the approximate lesser amount he would have the board lay upon him. This the State did not do, and so the board was confronted with the dilemma either of confirmation of its own tentative and presumptively valid apportionment figures, or of conducting a new hearing with resultant delay of that which had already been overdelayed. The board

---

[4] The affidavits were those of John E. Meyer and Lionel H. Wood. Both were engineers employed by the State highway department. It is not claimed that either affidavit disclosed an error of law on the part of the drainage board.

chose the former. That was the board's functional
right. Hence, for want of proof overcoming—neces-
sarily as a matter of law—the board's apportioning
discretion and judgment, it must be held that the
circuit judge did not err when he ordered dismissal
of both writs.

*Second:* There are 2 features common to both
cases which in general are decisive of affirmance.
The first is that the State does not deny that some
benefit, concededly substantial, will accrue to it from
each project. As in the presently quoted *Lowrie
Case,* it simply says it is being charged too much
for that benefit. Such an allegation, foregoing au-
thorities considered, is not judicially reviewable un-
less the record brought into court establishes that
the apportioned assessments were not laid in ac-
cordance with the legally permitted "best judgment"
of the appellee board. The record fails the State
in such regard.

The second feature to which allusion is made ap-
pears from the attorney general's abortive effort—
before the board—to support his objections by means
of repeated demands for cross-examination of en-
gineers and employees of the board. That such
demands were pure "fishing expeditions" is dis-
closedly clear. Indeed, on 1 occasion, when the
board's attorney inquired what the assistant attorney
general sought to draw forth from one of the board's
engineers, the response was, "I am not a soothsayer
and I don't know what he will say."

Of such practice Mr. Justice Fellows wrote, for
a unanimous Court (*Lowrie & Robinson Lumber Co.*
v. *City of Detroit,* 237 Mich 138, 141[5]) :

"But we shall not rest decision on this feature of
the case, as we do not feel that the practice of calling

---

[5] What was said of Lowrie's rule, in *C. A. Roberts Co.* v. *City of
Detroit,* 346 Mich 384, 387, is not opposed to present application of
*Lowrie's* rule.

assessing officers and cross-examining them as to the mental processes used in making the assessment should be encouraged, at least where fraud is not involved. In *Newport Mining Co.* v. *City of Ironwood,* 185 Mich 668, 685, it was said by Mr. Justice OSTRANDER, speaking for the court:

" 'It was held in *Chicago, B. & Q. R. Co.* v. *Babcock,* 204 US 585 (27 S Ct 326, 51 L ed 636), cited by plaintiff, that in an independent proceeding attacking the judgment of an assessing board it is improper to cross-examine the members in an attempt to exhibit confusion in their minds as to the method by which the result was reached.'

"The proceedings are regular; no fraud is alleged and no claim is made that any of plaintiff's constitutional rights have been invaded. In the final analysis plaintiff's claim is that it is assessed too much."

*Third:* We return to the attorney general's reliance upon the wording of section 468 and his insistence that the fifth sentence modifies the fourth so that the general rule of apportionment according to benefit is restricted in legal scope when an assessment against the State is required. We agree that such was the legislative intent. But that conclusion does not aid the State, again for want of proof, approximate or exact. Apportionment according to benefit is the general rule of the section. That rule must be applied save only when the State or county has affirmatively established some factually persuasive ground upon which a lower calculation of the amount of the assessment against the State or county may rest. The section, providing as it does no definite formula for ascertainment of apportionment based on "drainage of State highways," simply expresses an ideal—persuasive of course that approximate attainment thereof is always in order—that the State or county be charged no greater part of the total cost than is reasonably necessary to provide

proper drainage of participant State or county highways. The question of amount of the respectively apportioned assessments remains one of judgment. An administrative determination which by the laws of necessity must be based in part on the vagarious tempers and tempests of weather over a long period of years must, as before, remain immune from substitution—on certiorari—of judicial opinion and judgment for that of statutorily appointed administrators.

No error has been made to appear. The orders of the circuit court, quashing the writs of certiorari and confirming the board's statutory orders, are therefore affirmed. No costs.

CARR, C. J., and DETHMERS, KELLY, KAVANAGH, SOURIS, OTIS M. SMITH, and O'HARA, JJ., concurred.

---

PEOPLE, *ex rel*. STATE HIGHWAY COMMISSIONER, *v.* MACOMB COUNTY DRAIN COMMISSIONER.

1. DRAINS — INJUNCTION — DRAINAGE BOARD — APPORTIONMENT OF COSTS—JURISDICTION—FRAUD.