Kenneth WOOD, Jeffery Fansler, and Charles Bohner, Plaintiffs,

v.

GENERAL TEAMSTERS UNION, LOCAL 406; The Kroger Company, and Hamady Bros. Food Markets, Inc., Defendants.

No. G80–742 CA.

United States District Court, W.D. Michigan, S.D.

April 12, 1984.

See also, D.C., 565 F.Supp. 1011.

Dennis C. Kolenda, Varnum, Riddering, Schmidt & Howlett, Grand Rapids, Mich., for plaintiffs.

Gordon J. Quist, Miller, Johnson, Snell & Cummiskey, Grand Rapids, Mich., for Kroger.

Steven F. Spender, Hicks, Weston & Spender, Flint, Mich., for Hamady Bros.

Edward M. Smith, H. Rhett Pinsky, Pinsky, Smith & Soet, Grand Rapids, Mich., for General Teamsters & Local 406.

## OPINION

BENJAMIN F. GIBSON, District Judge.

This action arose out of a labor dispute surrounding the sale of warehouse facilities by Kroger to Hamady. The plaintiffs, former Kroger employees who were not hired by Hamady after the sale, brought the action alleging, *inter alia*, that the union breached its duty of fair representation to the plaintiffs in not protecting their seniority and other rights under the collective bargaining agreement with Kroger and that Kroger breached the collective bargaining agreement.[1]

During the course of the labor dispute, five grievances were filed against Kroger or Hamady by Kroger employees or the union. This action ensued and the plaintiffs essentially alleged that the union would not adequately represent their interests during the processing of the grievances.

By its Opinion and Order of May 21, 1981, this Court, in a companion case, *Teamsters v. The Kroger Co.*, No. G81–63, ordered the parties to submit the grievances to arbitration. Because of the unique circumstances presented in this case, the named plaintiffs and those with the same interests were allowed to represent themselves at the arbitration hearing although the union was to retain primary responsibility for prosecuting the grievances.

Pursuant to the terms of the collective bargaining agreement, Kroger and the union selected Robert G. Howlett, a local attorney and experienced arbitrator, to hear the grievances. A hearing was held and, on January 8, 1982, an opinion was issued in which all grievances were denied. The plaintiffs filed a supplemental complaint on May 11, 1982 in which they alleged that the union had undermined the arbitration process so as to deny them a fair hearing.

Now before the Court are defendants' motions seeking to have the Court disqualify plaintiffs' counsel pursuant to Disciplinary Rules 5–101 and 5–102 of the Code of Professional Responsibility[2] because of a

---

1. The plaintiffs also seek a declaratory judgment against Hamady holding it liable as a successor-employer under the collective bargaining agreement between Kroger and the union, and seek relief for Hamady's alleged discrimination in hiring based on handicaps, the filing of workers compensation claims, and age.

2. These state:

> DR 5–101. *Refusing Employment When the Interests of the Lawyer May Impair His Independent Professional Judgment.*
> (B) A lawyer shall not accept employment in contemplated or pending litigation if he knows or it is obvious that he or a lawyer in his firm ought to be called as a witness, except that he may undertake the employment and he or a lawyer in his firm may testify:
> (1) If the testimony will relate solely to an uncontested matter.
> (2) If the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony.
> (3) If the testimony will relate solely to the nature and value of legal services rendered in

possible conflict of interest involving plaintiffs' counsel. This possible conflict arose because the firm in which Arbitrator Howlett was a partner merged with the firm which has been representing the plaintiffs since the inception of this lawsuit. In addition, the union and Kroger have stated their intention to call Howlett as a witness on their behalf.[3]

Before deciding whether plaintiffs' counsel should be disqualified, it is necessary to answer the threshold question of whether Howlett, or any arbitrator, may be called to testify for the purposes stated by Kroger and the union. As the parties agree, an arbitrator generally may not testify for the purpose of impeaching or clarifying his award. *See generally* Annot., *Admissibility of Affidavit or Testimony of Arbitrator to Impeach or Explain Award*, 80 A.L.R.3d 155 (1977). The defendants argue, however, that Howlett is not being called to impeach or explain his award, but to sustain it.

Generally, the courts have been hesitant to sanction the questioning of arbitrators, at trial or during discovery. The Second Circuit recently has stated that "in the special context of what are in effect post hoc efforts to induce arbitrators to undermine the finality of their own awards, ... any questioning of arbitrators should be handled pursuant to judicial supervision

and limited to situations where clear evidence of impropriety has been presented." *Andros Compania Maritima v. Marc Rich & Co.*, 579 F.2d 691, 702 (2d Cir.1978). Other courts have determined that there is no legal basis for the questioning of an arbitrator in order to investigate the reasons behind the decision. *See, e.g., Reichman·v. Creative Real Estate Consultants*, 476 F.Supp. 1276, 1284 (S.D.N.Y.1979); *Fukaya Trading Co. v. Eastern Marine Corp.*, 322 F.Supp. 278, 279–80 (E.D.La. 1971).[4]

The Court also is persuaded by the reasoning in other cases where it was held that it was improper to question judicial and "quasi-judicial" officers to inquire into the reasons for their decisions. *See, e.g., United States v. Morgan*, 313 U.S. 409, 61 S.Ct. 999, 85 L.Ed. 1429 (1940) (Secretary of Agriculture); *Chicago, Burlington & Quincy Ry. Co. v. Babcock*, 204 U.S. 585, 27 S.Ct. 326, 51 L.Ed. 636 (1907) (State board of equalization and assessment); *Fayerweather v. Ritch*, 195 U.S. 276, 25 S.Ct. 58, 49 L.Ed. 193 (1904) (Judge); *Montgomery Ward & Co. v. Zenith Radio Corp.*, 673 F.2d 1254 (C.C.P.A.1982) (Secretary of Commerce); *United States v. American Telephone and Telegraph Co.*, 524 F.Supp. 1381 (D.D.C.1981) (FCC Commissioners and employees). The common thread running through these decisions is

the case by the lawyer or his firm to the client.
(4) As to any matter, if refusal would work a substantial hardship on the client because of the distinctive value of the lawyer or his firm as counsel in the particular case.
DR 5–102. *Withdrawal as Counsel When the Lawyer Becomes a Witness.*
(A) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial, except that he may continue the representation and he or a lawyer in his firm may testify in the circumstances enumerated in DR 5–101(B)(1) through (4).
(B) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm may be called as a witness other than

on behalf of his client, he may continue the representation until it is apparent that his testimony is or may be prejudicial to his client.

3. These parties seek Howlett's testimony regarding "the arbitration proceeding the participation of plaintiffs and their lawyers and the reasons for his decision," as well as possibly to give expert opinions. Union Pretrial Summary at 5–6; Kroger Pretrial Summary at 8, 10.

4. Some courts have allowed arbitrators to be questioned regarding what occurred at the arbitration hearing. *See Bliznik v. International Harvester Co.*, 87 F.R.D. 490 (N.D.Ill.1980). In the instant case, a transcript of the hearing exists and it therefore is not necessary to question the arbitrator for this purpose. *See Bliznik*, 87 F.R.D. at 492; *Northwest Airlines v. Air Line Pilots Assoc.*, 385 F.Supp. 634, 639–40 (D.D.C. 1974); *Fukaya Trading Co.*, 322 F.Supp. at 280.

that the officials whose testimony was sought spoke through their decisions and the reasoning behind the decision was not the proper subject of inquiry in collateral proceedings. The reasoning in *Babcock* is particularly pertinent:

> The members of the board were called, including the governor of the state, and submitted to an elaborate cross-examination with regard to the operation of their minds in valuing and taxing the roads. This was wholly improper. In this respect the case does not differ from that of a jury or an umpire, if we assume that the members of the board were not entitled to the possibly higher immunities of a judge. ... Jurymen cannot be called, even on a motion for a new trial in the same case, to testify to the motives and influences that led to their verdict.... So, as to arbitrators.... All the often-repeated reasons for the rule as to jurymen apply with redoubled force to the attempt, by exhibiting on cross-examination the confusion of the members' minds, to attack in another proceeding the judgment of a lay tribunal, which is intended, so far as may be, to be final, notwithstanding mistakes of fact or law.

204 U.S. at 593, 27 S.Ct. at 327 (citations omitted).

The distinction made by the defendants, that the arbitrator is being called to sustain rather than impeach or explain his verdict, is not an important one. First, as noted above, the defendants stated that they wished to call Howlett for testimony, at least in part, regarding "the reason for his decision." *See* note 3 *supra.*

Second, even assuming that the arbitrator may be called to testify in order to sustain his award, this would of necessity lead to attempts to elicit testimony tending to impeach the award on cross-examination. This point was recently discussed in *Brownko International, Inc. v. Ogden Steel Co.*, 585 F.Supp. 1432 at 1437 (S.D.N.Y.1983):

> I am entirely unpersuaded by Buck's contentions at oral argument that the uncertainty could be quickly and easily resolved by asking the arbitrators if Buck's

"fraud" figured in their award, the testimony on the point being limited to a simple "yes" or "no." Assuming, against the odds in my view, that sophisticated arbitrators would be likely to give such terse testimony even on direct examination, Brownko and Ogden would certainly be entitled to explore a "no" answer on cross examination which would open up all the issues raised by the parties and argued by counsel, and the manner in which the arbitrators dealt with the facts and the arguments. And, to come full circle, it is simply not appropriate to receive such testimony from quasi-judicial officers.

It would be unreasonable to permit the arbitrator to testify without allowing complete cross-examination and cross-examination likely would lead to improper testimony.

The Court also is of the opinion that it is not merely the nature of the questioning but the fact that the arbitrator is subject to questioning at all which is important here. The issues raised here could be raised in many actions challenging an arbitrator's award. Arbitrators would be subject to almost constant harassment if courts allowed them to be called as witnesses for the purposes stated by the defendants. *Cf. Wilsmann v. Upjohn*, 572 F.Supp. 242 (W.D.Mich.1983) (jurors may not be questioned to determine whether they included interest in their award of damages).

For all these reasons, the Court is of the opinion that an arbitrator is not competent to testify for the purposes listed by the defendants. Because Howlett may not testify, the complained of conflict of interest will not arise. For this reason, the defendants' motion to disqualify plaintiffs' counsel is denied.